# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434

---

| | |
|---|---|
| Appellate Court Caption | G.M. SIGN, INC., Individually and as the Representative of a Certified Class, Plaintiff-Appellee, v. MICHAEL SCHANE, Defendant (State Farm Fire and Casualty Company, Nonparty In Interest-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0434 |
| Filed | March 1, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although defendant's insurer disclaimed any coverage in the underlying action against its insured under the Telephone Consumer Protection Act, the insurer had standing to file a petition under section 2-1401 of the Code of Civil Procedure to vacate the subsequent judgment incorporating the underlying parties' settlement, including a provision that the judgment would be satisfied by the insurer, even though the insurer was not a party, since the insurer acted diligently, it only learned of the settlement after a coverage complaint was filed, and its petition raised potential meritorious claims; therefore, the dismissal of the petition was reversed and the cause was remanded for an evidentiary hearing. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CH-4480; the Hon. Mitchell L. Hoffman, Judge, presiding. |
| Judgment | Reversed and remanded, with directions. |

Counsel on
Appeal

Michael C. Borders and Rosa M. Tumialan, both of Dykema Gossett PLLC, of Chicago, for appellant.

Brian J. Wanca, David M. Oppenheim, and Jeffrey A. Berman, all of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock, of Bock & Hatch, LLC, of Chicago, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices McLaren and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1 The underlying lawsuit in this appeal is a class action that plaintiff, G.M. Sign, Inc., individually and as the representative of a certified class, brought against defendant, Michael Schane, asserting claims under the federal Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 *et seq.* (2000)), common-law conversion, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 *et seq.* (West 2010)). Schane's insurer, State Farm Fire & Casualty Company, disclaimed any insurance coverage obligation. On December 16, 2010, the circuit court of Lake County entered its final approval of a settlement agreement and a judgment against Schane for $4.9 million, to be collected solely from State Farm. On February 24, 2011, G.M. Sign filed a separate declaratory judgment action against State Farm (coverage action) (case No. 11-MR-315). On November 29, 2011, the trial court in the coverage action found that State Farm had a duty to defend and indemnify the judgment entered against Schane in the class action suit, provided that the settlement was reasonable. Thereafter, on December 30, 2011, State Farm filed a petition to vacate or modify the class action judgment, under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)). The trial court dismissed the petition, finding a lack of due diligence based on State Farm's decision not to accept the defense tender.

¶ 2 State Farm appeals that decision, contending that State Farm was diligent in the original action and in bringing the petition and that the trial court applied an incorrect standard to assess whether State Farm was diligent. State Farm further contends that the petition raised a meritorious defense. G.M. Sign questions whether State Farm had standing to file the section 2-1401 petition and thus whether this court has jurisdiction to address this appeal. We find that State Farm had standing to bring the section 2-1401 petition and that State Farm was diligent in the original action and in bringing the petition. Accordingly, we reverse the judgment of the trial court and remand the cause for an evidentiary hearing as to whether the petition raised a meritorious defense.

¶ 3                                       FACTS

¶ 4       G.M. Sign filed a three-count class action complaint on August 12, 2010. The complaint was directed against Academy Engraving Company and Schane. It alleged that Schane, an officer and director of Academy Engraving, sent mass, unsolicited, facsimile advertisements to G.M. Sign and at least 39 other recipients on September 6, 2007, without permission. The complaint alleged violations of the TCPA, common-law conversion, and violations of the Fraud Act. A motion for class certification accompanied the complaint. Academy Engraving was later dismissed as a defendant.

¶ 5       Schane promptly tendered the complaint to State Farm for insurance coverage. By letter dated September 10, 2010, State Farm disclaimed any coverage obligation to Schane in connection with this action. Schane filed an appearance and answer to the complaint on September 30, 2010.

¶ 6       G.M. Sign filed a motion for preliminary approval of a settlement agreement on October 5, 2010. The motion attached several exhibits, including the settlement agreement, which was signed by Schane on October 1, 2010. Under the terms of the agreement, Schane agreed to entry of a judgment against him in the amount of $4.9 million to be collected solely from his insurer. The settlement was preliminarily approved on October 7, 2010. A fairness hearing was set for December 16, 2010.

¶ 7       G.M. Sign filed affidavits showing notice to the class. G.M. Sign filed a motion for leave to file a corrected motion for preliminary approval of the settlement on November 12, 2010. The motion was intended to correct the original motion's reference to a stipulated judgment in the amount of $3.9 million instead of $4.9 million. G.M. Sign also filed a motion for leave to file an amended class action complaint on November 12, 2010, the purpose of which was to "plead into possible insurance coverage available under Schane's insurance policies."

¶ 8       The proposed amended class action complaint asserted largely the same preliminary allegations as the original complaint. Count I, the TCPA count, remained the same. The common-law conversion and Fraud Act counts were changed. Count II, the conversion count, no longer incorporated all of the original allegations and instead selectively incorporated only those allegations that made no express reference to the TCPA. Count III, the Fraud Act count, also incorporated only those allegations that made no reference to the TCPA. The amended class action complaint was based on the same faxes allegedly sent by Schane on September 6, 2007. The motions were presented and granted on November 18, 2010, with no objection. On December 16, 2010, following a hearing held to determine whether the settlement should be approved as fair, reasonable, and adequate, the trial court entered its final approval of the settlement. The order included a judgment against Schane for $4.9 million, to be satisfied by State Farm.

¶ 9       Thereafter, on February 8, 2011, G.M. Sign filed a citation to discover assets, directed to State Farm. There is no indication in the record that State Farm was served with the citation. On February 24, 2011, G.M. Sign filed the coverage action against State Farm, seeking a declaration that insurance coverage existed for the claims asserted against Schane in the amended class action suit. State Farm asserted that no coverage existed for the TCPA claims and averred that the settlement was not reasonable.

¶ 10     By order dated November 29, 2011, the trial court in the coverage action granted, in part, G.M. Sign's motion for judgment on the pleadings, finding that State Farm had the duty to defend and indemnify Schane in the class action suit. The trial court reserved the question of the reasonableness of the settlement, to be addressed in further proceedings.

¶ 11     On December 29, 2011, State Farm filed a section 2-1401 petition to vacate or modify the trial court's December 16, 2010, judgment, alleging that G.M. Sign was inadequate as the class representative, the notice provided to the class was inadequate, and the settlement terms were unfair to the absent class members. State Farm explained that it was not a party to the original action because it denied Schane's defense tender, based on a TCPA exclusion in Schane's business policy, a fact communicated to both Schane and counsel for G.M. Sign. State Farm further explained that it was diligent in pursuing relief under section 2-1401 because it was bringing the petition within one month of receiving and reviewing discovery responses that uncovered the facts supporting the petition. State Farm argued that, although a nonparty, it had standing to file the petition under the holding in *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1103-04 (2008).

¶ 12     As to the substantive argument, State Farm maintained that G.M. Sign was an inadequate class representative because it was not a member of the class certified by the trial court. G.M. Sign alleged in both the original and amended complaints that it received an unsolicited fax on September 6, 2007. However, the period certified by the trial court, as proposed by G.M. Sign, began on September 7, 2007. State Farm also questioned whether G.M. Sign's TCPA claims were time barred.

¶ 13     As to notice, State Farm questioned the efficacy of sending notice to fax numbers in October 2010 without verifying that the current owners of those numbers also owned them from September 2007 through June 18, 2008. State Farm observed that it was possible to identify all putative class members and send direct mail notice to them. State Farm also questioned the accuracy of the notice, to the extent that it permitted recovery in excess of the statutory maximum, and the need for a *cy pres* provision, except to maximize fees for class counsel, given the identifiability of the class members.

¶ 14     G.M. Sign argued that State Farm's petition was procedurally improper because State Farm was a nonparty and lacked the right to intervene. G.M. Sign further argued that State Farm failed to establish meritorious defenses because none of the "laundry list" of issues raised would have prevented entry of the judgment. However, G.M. Sign did not challenge State Farm's diligence in bringing the petition. Schane did not file a response and is not a party to this appeal.

¶ 15     In its response, State Farm refuted G.M. Sign's contention that it lacked standing or was required to intervene to pursue section 2-1401 relief. State Farm emphasized that its petition was not a continuation of the dispute being litigated in the pending coverage action. Rather, it was intended to address defects brought to light based on discovery responses related to the execution and final approval of the settlement agreement.

¶ 16     At the hearing on State Farm's petition, held on March 8, 2012, the trial court questioned State Farm's diligence. The court questioned how State Farm could establish diligence when it chose not to participate in the class action litigation despite being aware of it.

¶ 17    State Farm responded with the following explanation. The original complaint was tendered to State Farm in August 2010 and contained three counts that all supported TCPA violations, coverage for which was excluded under the insurance policy and denied by State Farm on that basis. The amended complaint was filed on November 18, 2010, *after* the settlement was executed, and it purported to plead around the policy's TCPA exclusion. The trial court granted final approval on December 16, 2010, and then the coverage action was filed by G.M. Sign. State Farm asserted that it first learned of the settlement by virtue of the coverage action, which was based on the amended complaint, to which G.M. Sign attached only the December 16 final approval order, not the settlement agreement itself.[1] State Farm was served with the amended complaint in or around March 2011. The legal question on the application and construction of the TCPA exclusion was ruled on in August 2011, at which time attention turned to discovery on the reasonableness of the settlement. State Farm asserted that only in the course of reviewing recently served answers to discovery did State Farm learn of the facts that supported its section 2-1401 petition.

¶ 18    The trial court again questioned whether State Farm had the opportunity to participate in the litigation from its inception:

"THE COURT: But you had the opportunity to participate in this litigation from the start. You made a decision not to because you didn't think you owed your insured any coverage, but you also knew that a coverage dispute was a possibility. So how does that amount to you being diligent in presenting issues to this Court in this lawsuit?"

¶ 19    Counsel for State Farm questioned whether the trial court was applying an estoppel analysis rather than one of due diligence:

"MS. TUMIALAN [State Farm's attorney]: Well, I think those are two different issues, Judge. One involves estoppel against [the insurer] for not doing what it's supposed to under Illinois law and Judge Hall found that–

THE COURT: I'm not asking about estoppel, I'm asking about your due diligence in presenting these issues to this Court.

MS. TUMIALAN: Well, the due diligence is, Judge, once we have the discovery on the reasonableness of the settlement, which is the only issue left in the [coverage] action, reviewing all these documents we noticed because we received those documents in November of 2011 and we filed our petition within a month."

¶ 20    The trial court questioned State Farm's motive in filing the petition. The argument then turned to the substantive points of the petition. The court found important the fact that there was an address that could be tied to each fax number.

¶ 21    The court pondered whether it was empowered to do anything other than vacate the December 16 order, as State Farm suggested. State Farm responded that the court was sitting in equity and could fashion the proper relief, which included modifying the order to provide

---

[1] Counsel for G.M. Sign conceded during oral argument that the settlement had been preliminarily approved but G.M. Sign did not include the settlement agreement when it tendered the amended complaint to State Farm.

for more appropriate and acceptable class notice.

¶ 22 G.M. Sign countered that State Farm's petition was defective because State Farm failed to serve G.M. Sign. The trial court found that G.M. Sign forfeited the issue for failing to raise it. G.M. Sign next argued that State Farm was attempting to relitigate the underlying suit and that State Farm had sufficient notice of the suit and chose not to respond.

¶ 23 As to the list of fax recipients, G.M. Sign explained that, after notice was sent, G.M. Sign asked for a copy of that list from the third party that sold it to Schane. The third party did not have the list Schane purchased but agreed to reconstruct it by running a search using the same terms in its 2010 database. Notice was then faxed to the numbers on the reconstructed list. The trial court questioned why addresses were not compiled before fax notices were sent. G.M. Sign stated that direct mail notice was not required. G.M. Sign added that a new mailing with a claim form could be sent to the class if the coverage action were resolved in its favor.

¶ 24 Regarding its adequacy as class representative, G.M. Sign admitted making a "typographical error" when counsel drafted the settlement agreement but it insisted that it was nevertheless part of the class.

¶ 25 State Farm explained that direct mail notice to the identifiable members of the putative class was not sent in October 2010 because G.M. Sign was in a hurry to consummate the settlement before State Farm filed a declaratory action. State Farm also addressed the trial court's concern that vacating the judgment would leave Schane at the mercy of a defense attorney interested in defeating coverage. State Farm explained that, if any defense were needed, State Farm would not be able to control it due to the reservation of rights in the TCPA exclusion. Schane's attorney of choice would remain his attorney. State Farm also reminded the court that it could preserve the settlement by modifying it along the lines suggested in State Farm's petition.

¶ 26 The trial court observed that State Farm seemed to be arguing on its own behalf and not on behalf of absent class members. The trial court further observed that "some of the suggestions that have been made regarding how the settlement could have been structured differently are probably worthy of consideration. If State Farm had wanted to participate in this action, it had every opportunity to do so." The trial court found that State Farm was not diligent in pursuing relief. The court stated:

"So the threshold issue here, before I get into anything else, is whether–is whether a 2-14–the prerequisites for a 2-1401 have been met, one of which is that you had to have been diligent in presenting these issues to the trial court prior to the judgment being entered. Clearly that is not the case here. State Farm was aware of the litigation and made a conscious decision not to participate. There is no stretch of the imagination where that equals due diligence presenting the issue to the trial court. It made a conscious decision. I understand that maybe the claims changed and maybe that changed their view of the coverage issue, but I think Counsel for Plaintiffs here is correct, State Farm should have reasonably anticipated that the claims could have changed during the course of the litigation and still they made a conscious decision not to participate. This is simply coming in with 20/20 hindsight and wanting to redo everything when you have had a

chance to participate to begin with.

So I don't think there is any basis for granting the 2-1401 because there is no showing of due diligence by State Farm."

¶ 27    A corresponding order dismissing State Farm's petition was also entered on March 8, 2012. This timely appeal followed.

¶ 28                                ANALYSIS

¶ 29                                Standing

¶ 30    We first address G.M. Sign's contention that State Farm had no standing to bring its section 2-1401 petition, because State Farm was not named as a party to the class action suit and never applied to intervene in that action. G.M. Sign argues that "State Farm cannot execute an end-run around the requirements for appellate jurisdiction by ignoring that requirement, improperly titling its Motion as one brought under Section 2-1401 of the Code of Civil Procedure and then invoking [Illinois Supreme Court] Rule 304(b)(3)." We disagree.

¶ 31    In *Hurlbert*, the plaintiffs, administrators of a patient's estate, brought an action against the defendant, a dentist, arising out of the patient's death following the extraction of multiple teeth. The trial court entered a stipulated judgment in favor of the plaintiffs with the further stipulation that the plaintiffs would look solely to the defendant's insurance company for satisfaction. *Hurlbert*, 386 Ill. App. 3d at 1098. The plaintiffs and the defendant later filed a joint section 2-1401 petition to amend the judgment, seeking to increase the amount, because of mutual mistake as to the amount of available insurance coverage. The petition was granted. *Id.* at 1099. The insurance company then filed a section 2-1401 petition to vacate the amended judgment, asserting that the mutual mistake was an insufficient basis for amending the judgment and that the defendant had been informed of his policy limits before the initial judgment was entered. *Id.* The plaintiffs filed a motion to dismiss asserting that the insurance company lacked standing to file its petition to vacate, because it was no longer a party to the case and did not file a petition to intervene. *Id.* The trial court granted the plaintiffs' motion to dismiss the petition to vacate. *Id.* at 1099-1100.

¶ 32    The insurance company argued on appeal that it had standing to file the petition as a nonparty because it would be injured by the increased judgment amount and would derive a benefit from the amended judgment being vacated. *Id.* at 1102. The appellate court first determined that the insurer was not a party and then recited "a few narrow exceptions" allowing a nonparty to seek relief under section 2-1401, those being if the person is privy to the record, is injured by the judgment and will derive a benefit from its reversal, or is competent to release error. *Id.* State Farm argues that *Hurlbert* is indistinguishable from the present case.

¶ 33    G.M. Sign asserts that *Hurlbert* departs from the general rule that, "if the court had jurisdiction of the parties and the subject matter[,] the judgment could not be attacked by one not a party to the proceedings." *In re Estate of Reilly*, 68 Ill. App. 3d 906, 909 (1979). In *Reilly*, the trial court dismissed a petition to have a conservator appointed for an alleged incompetent. The petitioner's attorney filed a section 2-1401 petition to vacate the judgment in order to recover expenses and attorney fees he unintentionally did not seek prior to the

-7-

dismissal. *Id.* at 908. The appellate court affirmed the trial court's dismissal of the attorney's section 2-1401 petition, on the ground that the attorney was a nonparty to the original proceedings and lacked standing to vacate the judgment. *Id.* at 908-09. In *Elmhurst National Bank v. Novak*, 137 Ill. App. 3d 904, 906 (1985), this court held that *Reilly* was dispositive where a nonparty bank sought to vacate a judgment to recover a refund of interest from the county collector. "Under the authority of [*Reilly*], Du Page Bank clearly was not entitled to relief under section 2-1401 ***. Du Page Bank was not a party to the original proceedings, nor did it seek to intervene during the pendency of that action." *Id.* at 906-07. Citing *Elmhurst National Bank*, this court stated in *People ex rel. Village of Lake Bluff v. City of North Chicago*, 224 Ill. App. 3d 866, 874 (1992), "section 2-1401 (previously section 72) was never intended to permit a person not a party to an action to intervene after final judgment and reopen the suit so as to permit a new claim to be filed." In *Frandsen v. Anderson*, 108 Ill. App. 2d 194, 201-02 (1969), this court held that an attorney sued by his client for malpractice had no standing to set aside the original judgment against his client.

¶ 34    Section 2-1401 is the current embodiment of the ancient common-law writ of error *coram nobis*, which was used to bring to the attention of the court matters of fact that would have prevented entry of the judgment had the true facts been known when the judgment was entered. *Id.* at 200-01. Relief was available (and is currently available under section 2-1401) to a party or privy to the record, one injured by the judgment and who would derive benefit from its reversal, or one who was competent to release error. *Id.* at 201. *Hurlbert* recognized the categories of nonparties to whom relief was available but stated that they were narrow exceptions to the rule that only parties could seek relief. *Hurlbert*, 386 Ill. App. 3d at 1102. Therefore, even if only as exceptions, nonparties under certain conditions have always had standing to vacate judgments. State Farm maintains that it has standing under the principle that it was injured by the judgment and would benefit from its reversal.

¶ 35    Here, like the insurer in *Hurlbert*, State Farm was named in the consent judgment. State Farm, as the only entity from which the judgment could be satisfied, is the only entity injured by the judgment. Accordingly, we hold that State Farm had standing to petition under section 2-1401 to vacate or modify the judgment.

¶ 36    G.M. Sign contends that, because State Farm wrongfully refused to defend and refrained from petitioning to intervene prior to judgment in the class action, State Farm cannot contest the issues decided in that action. Whether State Farm was required to intervene before the consent judgment was entered is not a question pertaining to standing and therefore it does not require our consideration.

¶ 37                                    Due Diligence

¶ 38    The trial court determined that State Farm was not diligent in presenting its defense in the original action, because State Farm denied coverage to Schane in the class action, it was at all times on notice of the action, and it simply chose not to participate. State Farm contends that the trial court's ruling was based on an improper focus on State Farm's refusal of the tender of defense in the class action rather than on when State Farm became aware of the facts prompting its decision to file the petition. We agree.

-8-

¶ 39    A petitioner is entitled to relief under section 2-1401 of the Code when he sets forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; and (3) due diligence in filing the petition for relief. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). In the present case, the trial court, *sua sponte* and without an evidentiary hearing, determined that State Farm lacked due diligence in defending the underlying action. Because this ruling amounts to a dismissal for failure to state a claim, or summary judgment, it is reviewed *de novo*. See *People v. Vincent*, 226 Ill. 2d 1, 14-15 (2007).

¶ 40    Two types of due diligence must be shown: (1) due diligence with respect to the original action; and (2) due diligence with respect to the section 2-1401 petition itself. *People v. Davis*, 2012 IL App (4th) 110305, ¶ 19 (citing *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 496 (1998)). First, the petitioner must show that its failure to discover new facts prior to the entry of the judgment was the result of an excusable mistake and not a product of negligence. To meet this requirement, the petitioner must demonstrate that " 'under the circumstances he acted reasonably, and not negligently.' " *Id.* (quoting *Airoom*, 114 Ill. 2d at 222). The second due diligence requirement involves showing that the petition itself was filed in a timely manner. A petitioner must file the petition without undue delay after becoming aware of the factual basis for the petition. *Id.* ¶ 20.

¶ 41    Here, the trial court specifically found a lack of due diligence in presenting the defense or claim in the original action. However, the trial court did not focus on when State Farm became aware of the facts prompting its decision to file the section 2-1401 petition. State Farm had refused the tender of defense by relying on the explicit TCPA exclusion in Schane's insurance policy. G.M. Sign filed an amended complaint, which potentially brought the claims within the insurance policy. However, the amended complaint was filed *after* a settlement had been reached. Furthermore, when State Farm received the amended complaint, G.M. Sign did not attach a copy of the settlement agreement. Given these facts, there was no lack of diligence in State Farm's failure to defend under a reservation of rights, where a settlement already had been reached. Therefore, there could be no finding of a lack of due diligence in the original proceedings.

¶ 42    Furthermore, as to due diligence with respect to filing the petition, State Farm claimed in its petition that it learned of the settlement when it was served with the coverage complaint that alleged that G.M. Sign's suit against Schane was settled via a stipulated judgment. However, State Farm did not learn of the facts illustrating how the settlement was executed and approved until it delved into discovery in the coverage action in November 2011. At that time, State Farm first learned the details surrounding the execution of the settlement, *i.e.*, "class counsel's desire to expedite the process to be able to file a declaratory action before State Farm did, the error in the class period that excluded the named class plaintiff[,] and the fact that the notice sent may not have reached class members who received a 2007 fax from Schane which liability Schane sought to discharge by the settlement." State Farm filed the petition within 30 days of discovering the facts on which the petition was based. We find that these undisputed facts establish diligence in filing the petition.

¶ 43                                    Meritorious Claim

¶ 44        Having established that State Farm was diligent with respect to the original action and
that the petition was filed without undue delay, State Farm maintains that the record was
sufficiently developed to entitle it to the relief sought. Our supreme court clarified the law
pertaining to section 2-1401 petitions in *Vincent*. The party seeking relief from a judgment
must plead and prove (1) that he had "a defense or claim that would have precluded entry of
the judgment in the original action" and (2) that he acted with "diligence in both discovering
the defense or claim and presenting the petition." *Vincent*, 226 Ill. 2d at 7-8. The party
opposing the section 2-1401 petition may move to dismiss it as insufficient at law, or the
party may dispute the factual assertions of the petition. *Id.* at 8-9. Where the parties dispute
a material issue of fact, the trial court should hold an evidentiary hearing before ruling on the
petition. *Id.* at 9; *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, ¶ 8.

¶ 45        In this case, State Farm's section 2-1401 petition raised potential meritorious claims
regarding the adequacy of the class representative, the adequacy of the notice, and the
fairness of the settlement terms to the absent class members. Although the court heard
argument, it never held an evidentiary hearing or issued a ruling on these substantive issues.
Instead, the court applied an incorrect standard to assess whether State Farm was diligent in
the original action. Without an evidentiary hearing, the record is not sufficiently developed
to enable this court to grant State Farm the relief it seeks. See *Vincent*, 226 Ill. 2d at 7-8
("Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of
a defense or claim that would have precluded entry of the judgment in the original action and
diligence in both discovering the defense or claim and presenting the petition.").
Accordingly, we must remand to the trial court for an evidentiary hearing on the merits of
the petition.

¶ 46                                     CONCLUSION

¶ 47        For the preceding reasons, we reverse the decision of the circuit court of Lake County and
remand the cause.

¶ 48        Reversed and remanded, with directions.