# Illinois Official Reports

## Appellate Court

---

**G.M. Sign, Inc. v. State Farm Fire & Casualty Co., 2014 IL App (2d) 130593**

---

| | |
|---|---|
| Appellate Court Caption | G.M. SIGN, INC., Individually and as the Representative of a Certified Class, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Counterplaintiff-Appellant and Cross-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0593 |
| Filed<br>Modified upon<br>denial of rehearing | May 2, 2014<br><br>September 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an underlying blast-fax action where plaintiff settled its claim by agreeing to satisfy the judgment it obtained against the underlying defendant, who violated the Telephone Consumer Protection Act, from the insurance policy issued by the defendant insurer in the instant declaratory judgment action, the trial court erred in entering summary judgment for plaintiff, since the policy's specific exclusion of claims under the Act applied to the claims for conversion and consumer fraud in plaintiff's amended complaint, especially when plaintiff would be unable to prove defendant in the underlying action was liable on the conversion and consumer fraud claims without also proving a violation of the Act, and plaintiff's attempt to recharacterize the class action it had already litigated and settled in order to obtain insurance coverage could not be condoned. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-MR-315; the Hon. Diane E. Winter and the Hon. David M. Hall, Judges, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Michael C. Borders and Rosa M. Tumialan, both of Dykema Gossett PLLC, of Chicago, for appellant.

Brian J. Wanca, David M. Oppenheim, and Jeffrey A. Berman, all of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, of Chicago, for appellee.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Birkett concurred in the judgment and opinion.


**OPINION**

¶ 1    This is a declaratory judgment action involving a dispute over insurance coverage for a blast-fax case. The question is whether defendant State Farm Fire and Casualty Company's policy exclusion (hereinafter Endorsement FE-6655) applied to the amended complaint in the underlying litigation. If Endorsement FE-6655 applied, then State Farm's duty to defend was never triggered. The circuit court of Lake County ruled that State Farm had a duty to defend and to indemnify. After modifying our opinion upon denial of plaintiff G.M. Sign, Inc.'s petition for rehearing, we reverse and remand with directions to enter judgment in State Farm's favor.


¶ 2                    I. BACKGROUND

¶ 3    The facts pertinent to this appeal are taken from the present record and from this court's opinion in *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434. The appeal in *Schane* arose out of the underlying blast-fax litigation, in which G.M. Sign pursued a class action against Michael Schane and his company, Academy Engraving Company, for sending unsolicited fax advertisements. Because Academy was dismissed from the underlying suit, we refer only to Schane when discussing the underlying litigation.


¶ 4              A. The Underlying Litigation (No. 10-CH-4480)

¶ 5    On August 12, 2010, G.M. Sign, individually and as the representative of a class of similarly situated persons, filed suit against Schane. The complaint began: "This case challenges [Schane's] practice of faxing unsolicited advertisements." The complaint's preliminary allegations further alleged that G.M. Sign was seeking "an award of statutory damages for each violation of the [Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 *et seq.* (2000))]." The TCPA makes it unlawful to fax an unsolicited advertisement unless the sender has an established business relationship with the recipient, the recipient consents to such a communication, and the advertisement contains an opt-out notice. 47 U.S.C. § 227(b)(1)(C) (2000).

¶ 6    The complaint contained three counts: count I alleged a violation of the TCPA; count II alleged conversion; and count III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq*. (West 2010)). Each count incorporated the same factual allegations: on or about September 6, 2007, Schane faxed to G.M. Sign an advertisement, which was attached to the complaint as "Exhibit A"; G.M. Sign had not given Schane permission to fax advertisements to it; and Schane faxed "the same or similar advertisements" to G.M. Sign and more than 39 other recipients without first receiving their express permission. All three counts incorporated allegations that the unsolicited fax advertisements violated the TCPA.

¶ 7    Count I of the complaint proposed the following class:

"All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of [Schane], (3) with respect to whom [Schane] did not have prior express permission or invitation for the sending of such faxes, and (4) with whom [Schane] did not have an established business relationship."

The classes proposed in counts II and III were essentially the same except for the time periods referenced.[1] The class for count II was composed of all persons who received faxes on or after a date five years prior to the filing of the action, while the class for count III was composed of all persons who received faxes on or after a date three years prior to the filing of the action. As in count I, the classes in counts II and III consisted of persons who received advertisements, who had not given Schane permission to send them, and who did not have established business relationships with Schane.

¶ 8    Schane tendered the suit to State Farm, his business insurer. On September 10, 2010, State Farm, by letters to Schane and to G.M. Sign's attorney, denied coverage based on Endorsement FE-6655:

"**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES EXCLUSION ENDORSEMENT**

The following exclusion is added to **BUSINESS LIABILITY EXCLUSIONS:**

**Exclusions:**

This insurance does not apply to:

**Bodily injury, property damage, personal injury,** or **advertising injury** *arising directly or indirectly out of* any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." (Emphasis added.)

---

[1]Presumably, the different time periods were meant to reflect the different statutes of limitations applicable to the three counts.

Schane thereafter filed an answer to the complaint.

¶ 9     On October 1, 2010, G.M. Sign entered into a settlement agreement with Schane. In the agreement, the parties stipulated to a class consisting of "all persons to whom [Schane] sent advertising facsimiles during the period of September 7, 2007 through June 17, 2008."[2] The settlement agreement noted that, during that period, Schane faxed a total of 49,825 advertisements to the class members without their prior express permission. It further recited that "a finding of liability under the TCPA with statutory damages of $500 per unsolicited fax would result in a damage award of $24,912,500.00 before trebling" and that "such a judgment would bankrupt [Schane] and cause the dissolution of his business." Schane agreed to have judgment entered against him in the amount of $4.9 million, which settled "all disputes between [Schane] and the class." The agreement also provided that G.M. Sign and the class would not execute on the judgment against Schane personally, but would satisfy the judgment only from his State Farm insurance policy.

¶ 10    On October 5, 2010, G.M. Sign filed a motion for certification of the class and for preliminary approval of the settlement. G.M. Sign reiterated the facts outlined in the settlement and argued that class certification was appropriate because Schane's conduct was "substantially similar as to each class member." G.M. Sign further contended in the motion that the following questions could be "answered on a class-wide basis": (1) "[w]hether [Schane] faxed advertisements without obtaining the recipients' prior express invitation or permission"; (2) "[Schane's] manner and method for compiling or obtaining the list of fax numbers to which it sent Exhibit A to the Complaint"; and (3) "[w]hether [Schane] violated the provisions of [the TCPA] by faxing the advertisements."

¶ 11    On October 7, 2010, the trial court certified the proposed class and preliminarily approved the settlement. The certified class consisted of "[a]ll persons to whom [Schane] sent advertising facsimiles during the period of September 7, 2007 through June 17, 2008." The court set December 16, 2010, as the date for final approval of the settlement.

¶ 12    On November 12, 2010, G.M. Sign sought leave to file an amended complaint, the admitted purpose of which was to " 'plead into possible insurance coverage available under Schane's insurance policies.' " *Schane*, 2013 IL App (2d) 120434, ¶ 7. The motion was granted, and G.M. Sign filed the amended complaint on November 18, 2010. It asserted largely the same preliminary allegations as the original complaint. However, instead of alleging that G.M. Sign had received a fax advertisement and that the class members had received "the same or similar advertisements," the amended complaint alleged that G.M. Sign had received an "unsolicited facsimile" and that the class members had received "the same or similar unsolicited facsimiles." Furthermore, although count I of the amended complaint incorporated by reference all of the preliminary factual allegations, counts II and III (alleging conversion and consumer fraud) incorporated only those factual allegations that contained no reference to the TCPA.

¶ 13    Additionally, the proposed classes for counts II and III of the amended complaint had been changed. The class for count II was "[a]ll persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of [Schane]."

---

[2]It is unclear why the settlement agreement recited that the unsolicited fax advertisements began on September 7, 2007, while the class action complaint alleged that G.M. Sign received a fax advertisement from Schane on or about September 6, 2007.

The class for count III was "[a]ll persons in Illinois who on or after a date three years prior to the filing of this action were sent telephone facsimile messages by or on behalf of [Schane]." No longer did the classes for counts II and III consist expressly and exclusively of persons who had received advertisements, who had not given Schane permission to send them, and who did not have established business relationships with Schane.

¶ 14    Schane's attorney testified at his deposition that he tendered the amended complaint to State Farm on December 10, 2010, but that he did not at that time inform State Farm that the case had been settled. When asked why he tendered the amended complaint to State Farm even though the case was settled, Schane's attorney said that he did not know. He recalled that he did it upon G.M. Sign's attorney's representation that he should. At oral argument in the *Schane* case, G.M. Sign conceded that the tender of the amended complaint to State Farm did not include the settlement agreement, even though the settlement had been preliminarily approved. *Schane*, 2013 IL App (2d) 120434, ¶ 17 n.1. State Farm again denied coverage.

¶ 15    On December 16, 2010, the trial court entered an order of final approval of the settlement agreement. Although the amended complaint proposed a different class for counts II and III than the class the trial court had certified based upon the original complaint, the certified class and the settlement agreement remained unchanged.

¶ 16                    B. The Declaratory Judgment Action (No. 11-MR-315)

¶ 17    On February 24, 2011, G.M. Sign filed the present declaratory judgment action against State Farm. G.M. Sign claimed coverage under Schane's insurance policy and argued that State Farm was estopped from asserting policy defenses because it did not defend Schane under a reservation of rights or file a suit seeking a declaration that no coverage was afforded. G.M. Sign concluded that State Farm owed Schane a duty to defend him and to indemnify any judgment entered on the amended complaint in No. 10-CH-4480. State Farm filed an answer, an amended affirmative defense claiming that the settlement was unreasonable, and an amended counterclaim seeking a declaratory judgment in its favor based on Endorsement FE-6655, as well as a declaration of no coverage under other policy provisions.

¶ 18    State Farm moved for judgment on the pleadings, asserting that it had no duty to indemnify the stipulated judgment, based on Endorsement FE-6655. G.M. Sign filed a cross-motion for judgment on the pleadings, contending, *inter alia*, that the amended complaint in No. 10-CH-4480–particularly the conversion and consumer fraud counts–pleaded claims that were potentially within coverage. The trial court denied State Farm's motion and granted G.M. Sign's motion in part, finding that State Farm owed a duty to defend and to indemnify under the policy. The court reasoned that counts II and III of G.M. Sign's amended complaint in the underlying class action were broad enough to potentially include faxes that were not covered by Endorsement FE-6655. On May 3, 2012, State Farm filed a second amended counterclaim, which, like its amended counterclaim, sought a declaration of no duty to defend or to indemnify based on Endorsement FE-6655.

¶ 19    State Farm then filed a motion for summary judgment regarding the extent of its duty to indemnify. G.M. Sign filed a cross-motion for summary judgment, asserting that State Farm was liable to indemnify the entire judgment because it was estopped from raising policy defenses. On February 27, 2013, the trial court ruled in a written order. It found that the judgment was entered against Schane after State Farm denied coverage but before the filing

of the declaratory judgment action. It further found that Judge David Hall, in ruling on the cross-motions for judgment on the pleadings, had determined that State Farm had a duty to defend Schane and breached that duty. The court ruled that, "[a]ccordingly, State Farm is estopped from raising arguments that stem from policy-based defenses to coverage." However, the court ruled that "estoppel in this context does not preclude determination of the extent of coverage and the reasonableness of the settlement agreement that was reached." The court then held, *inter alia*, that the damages were the result of a single occurrence and that the settlement was reasonable.

¶ 20 Both parties filed motions to reconsider, which the court denied on May 15, 2013. In its order, the court also granted State Farm's motion to post an insurance policy to stay the judgment and denied G.M. Sign's motion for inclusion of postjudgment interest. State Farm filed a notice of appeal on June 4, 2013. With leave of court, G.M. Sign filed a notice of cross-appeal on July 23, 2013.

¶ 21 II. ANALYSIS

¶ 22 State Farm contends that the trial court erred in finding that it had a duty to defend Schane against the underlying amended complaint, because (1) Endorsement FE-6655 applied to the counts alleging conversion and consumer fraud (the alternative counts); (2) the alternative counts failed to allege property damage caused by an occurrence as those terms are defined in the policy; (3) State Farm's duty to defend, if any, arose after the case was settled and Schane's liability was extinguished; and (4) the settlement was unreasonable. In its cross-appeal, G.M. Sign contends that (1) the trial court erred in limiting the judgment against State Farm to a single occurrence; and (2) the court erred in ruling that State Farm need not indemnify postjudgment interest that was actually awarded.

¶ 23 As to State Farm's appeal, we find its first argument–that it owed no duty to defend against the amended complaint, because Endorsement FE-6655 applied to the alternative counts–dispositive. Consequently, we need not address State Farm's remaining arguments or G.M. Sign's arguments on cross-appeal.

¶ 24 The trial court determined that State Farm had a duty to defend Schane in the underlying litigation in the context of ruling on the parties' cross-motions for judgment on the pleadings. A motion for judgment on the pleadings is limited to the pleadings. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). When ruling on such a motion, a court must consider as admitted all well-pleaded facts set forth in the nonmoving party's pleading and the fair inferences drawn therefrom. *Wilson*, 237 Ill. 2d at 455. Judgment on the pleadings is proper if the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Wilson*, 237 Ill. 2d at 455. We review *de novo* a ruling on a motion for judgment on the pleadings. *Wilson*, 237 Ill. 2d at 455.

¶ 25 Ordinarily, in a declaratory judgment action where the issue is an insurer's duty to defend, a court looks first to the allegations of the underlying complaint and compares them to the insurance policy's relevant provisions. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage. *Outboard Marine*, 154 Ill. 2d at 108. In determining whether there is a duty to defend, the allegations in the underlying complaint must be construed liberally, and any doubts must be resolved in favor of coverage. *Scudder v. Hanover Insurance Co.*, 201 Ill.

App. 3d 921, 925 (1990). An insurer cannot refuse to defend its insured once the duty is triggered. *Home Insurance Co. v. United States Fidelity & Guaranty Co.*, 324 Ill. App. 3d 981, 995 (2001). Rather, the insurer must either defend under a reservation of rights or seek a declaratory judgment that there is no coverage. *Home*, 324 Ill. App. 3d at 995-96. If the insurer fails to take either of these steps and is later determined to have wrongfully denied coverage, the insurer will be estopped from raising policy defenses to coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-51 (1999). However, the estoppel doctrine applies only if the insurer has wrongfully denied coverage. *Ehlco*, 186 Ill. 2d at 150.

¶ 26    In construing an insurance policy, the court must ascertain the intent of the parties to the contract. *Outboard Marine*, 154 Ill. 2d at 108. Courts construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire policy. *Outboard Marine*, 154 Ill. 2d at 108. If the words used in the policy are unambiguous, courts afford them their plain, ordinary, and popular meaning. *Outboard Marine*, 154 Ill. 2d at 108.

¶ 27    We agree with State Farm that G.M. Sign's amended complaint did not allege claims that potentially fell within coverage. In essence, G.M. Sign offers two arguments for why the alternative counts of the amended complaint potentially fell within coverage: (1) the alternative counts had different elements and sought different damages than the TCPA count, and (2) the alternative counts were premised on different facts than the TCPA count and were broad enough to include faxes that did not violate the TCPA.

¶ 28    Regarding G.M. Sign's first argument, we disagree that, in construing Endorsement FE-6655, the pertinent analysis requires comparing the elements of the alternative counts to the elements of the TCPA count. Endorsement FE-6655 excludes coverage for property damage or advertising injury "arising directly or indirectly" out of any action or omission that violates or is alleged to violate the TCPA or any other statute that prohibits or limits the sending, transmitting, communicating, or distributing of material or information. The phrase "arising out of" is both broad and vague, requiring us to liberally construe it in favor of the insured. *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 154 (1984). "Arising out of" means "originating from," "having its origin in," "growing out of," and "flowing from." (Internal quotation marks omitted.) *Maryland Casualty*, 126 Ill. App. 3d at 154. The proper analysis of the "arising out of" language in Endorsement FE-6655 is a "but for" analysis, not an elements analysis. *Maryland Casualty*, 126 Ill. App. 3d at 154 ("but for" causation, not proximate causation, satisfies the "arising out of" language).

¶ 29    The operation of the "but for" analysis is illustrated in *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172 (2008). In *American Economy*, the plaintiff in the underlying suit sued the defendants, including DePaul University, for personal injuries that she alleged were caused by their negligent installation of fluorescent lights in the construction of a building where she worked. *American Economy*, 383 Ill. App. 3d at 173. DePaul was an additional insured on a policy issued by American Economy to the electrical subcontractor. *American Economy*, 383 Ill. App. 3d at 182. The additional-insured endorsement provided coverage for DePaul's liability "arising out of" the electrical subcontractor's work for DePaul. *American Economy*, 383 Ill. App. 3d at 182. In determining that American Economy owed DePaul coverage, the appellate court looked to the underlying

complaint, which alleged that the underlying plaintiff was injured because of the selection and installation of fluorescent lighting without ultraviolet diffusers. *American Economy*, 383 Ill. App. 3d at 182. The court held that there was potential for DePaul's liability because, "but for" the electrical subcontractor's installation of the fluorescent lights without diffusers, the underlying plaintiff would not have suffered injury. *American Economy*, 383 Ill. App. 3d at 182. Thus, here, rather than comparing the elements of the various causes of action alleged in the amended complaint, we look at whether, but for Schane's alleged act of sending faxes that violated the TCPA, G.M. Sign would have suffered injury.

¶ 30 This brings us to G.M. Sign's second argument–that the alternative counts were premised on different facts than the TCPA count and were broad enough to include faxes that did not violate the TCPA. We disagree. Although the alternative counts selectively incorporated only those factual allegations that contained no reference to the TCPA, to the faxes being advertisements, or to the lack of any established business relationships between Schane and the class members, they nevertheless were based on the same facts as the TCPA count. All three counts incorporated by reference the allegations that, on or about September 6, 2007, G.M. Sign received an "unsolicited facsimile" and that the class members received "the same or similar unsolicited facsimiles." Other than these factual allegations–which were the very allegations that formed the basis for the TCPA count–the amended complaint contained no allegations referencing any faxes sent by Schane.

¶ 31 G.M. Sign contends that it pleaded in both alternative counts that Schane sent faxes other than those covered by the TCPA count. However, the allegations to which G.M. Sign refers merely defined the classes of persons covered by the actions, not the events giving rise to the actions. For example, paragraph 31 of the amended complaint alleged that count II was brought on behalf of "[a]ll persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of [Schane]." This allegation defined the class–all persons who received faxes from Schane–but added no factual allegations of any specific events.

¶ 32 In essence, G.M. Sign maintains that the vagueness of its amended complaint is the very virtue that triggered State Farm's duty to defend. According to G.M. Sign, "the fact that the [amended] complaint does not say one way or the other whether all of the faxes were advertisements or whether they all were sent to people without established business relationships with Schane *** should establish State Farm's duty to defend, not the lack thereof."

¶ 33 G.M. Sign argues nothing more than that it should be allowed to avoid application of the policy exclusion by deliberately and strategically leaving its complaint so bereft of factual allegations that myriad unpleaded scenarios could fall within its scope. This argument renders meaningless a court's duty to compare the "facts" alleged in the complaint to the relevant policy language. Illinois is a fact-pleading jurisdiction. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 499 (1996). Even under federal notice pleading, a plaintiff must allege a statement of the claim showing that the pleader is entitled to relief (Fed. R. Civ. P. 8(a)(2)), which requires more than " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

¶ 34 Under *Outboard Marine*, an insurer's refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the "facts" alleged do not potentially fall

within the policy's coverage. *Outboard Marine*, 154 Ill. 2d at 108. A court can rationally apply this rule only if the underlying complaint contains sufficient factual allegations to constitute a valid pleading. Here, because it did not contain any factual allegations of faxes other than those that violated the TCPA, G.M. Sign's amended complaint did not trigger State Farm's duty to defend.

¶ 35     In arguing that its amended complaint alleged claims that potentially fell within coverage, G.M. Sign offers citations to a number of circuit court orders. *Stare decisis* requires courts to follow decisions of higher courts but does not require courts to follow decisions of equal or inferior courts. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). The cited circuit court orders are either distinguishable from this case or unpersuasive, and we decline to afford them any weight in our resolution of this appeal. In none of the cited circuit court orders (two of which actually are transcripts of trial courts' oral rulings) does the court construe the phrase "arising out of" in accordance with *Maryland Casualty*. Nor do the courts address the common factual allegations underlying the various counts of the complaints at issue. Instead, the courts conclude that, because the elements of conversion and consumer fraud differ from the elements of violation of the TCPA, the complaints potentially trigger coverage. This is an argument we have rejected for the reasons previously explained.

¶ 36     The only other case that G.M. Sign cites is *Nationwide Mutual Insurance Co. v. Harris Medical Associates, LLC*, 973 F. Supp. 2d 1045 (E.D. Mo. 2013). There, the district court had before it a policy exclusion similar to the one in our case. However, *Nationwide* is inapplicable, because (1) the district court was bound to apply either Georgia or Missouri law; (2) the court specifically rejected Illinois law; and (3) the parties had not furnished the court with facts relevant to a choice-of-law analysis. *Nationwide*, 973 F. Supp. 2d at 1055-56. Under those circumstances, the district court concluded that, "[f]or now," "plaintiffs have not established that there is no potential for coverage for the underlying [conversion] claim based on the Violation of Statutes exclusion." *Nationwide*, 973 F. Supp. 2d at 1056. The district court engaged in no reasoning or analysis. *Nationwide*, 973 F. Supp. 2d at 1056.

¶ 37     State Farm relies on an unpublished decision of the Michigan Court of Appeals. In *GM Sign, Inc. v. Auto-Owners Insurance Co.*, No. 301742, 2012 WL 4840592 (Mich. Ct. App. Oct. 11, 2012), the court construed the language of an exclusion similar to the one here. The court applied Illinois law–specifically, *Maryland Casualty*–and concluded that the plaintiff's alternative counts, which alleged common-law conversion and a violation of the Act, arose from the same acts as the alleged violation of the TCPA. *Auto-Owners*, 2012 WL 4840592, at *4 ("The faxing of the ads constitutes the 'acts' that allegedly violated the TCPA."). Relying on *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 364-65 (2006)–where our supreme court said that "[t]he essence of a TCPA fax-ad claim is that one party sends another an unsolicited fax advertisement"–the court found that the underlying defendant's acts of faxing unsolicited advertisements to unwilling recipients were identical to the acts at the heart of the conversion and consumer fraud claims. *Auto-Owners*, 2012 WL 4840592, at *4.

¶ 38     We find *Auto-Owners*' reasoning persuasive. See *Nulle v. Krewer*, 374 Ill. App. 3d 802, 806 n.2 (2007) (this court is free to use the reasoning in an unpublished opinion from another state). Thus, we hold that the alternative counts of G.M. Sign's amended complaint arose from the same conduct that was the basis for its TCPA claim. Accordingly, Endorsement

FE-6655 applied, and State Farm had no duty to defend or to indemnify Schane in the underlying suit. It follows that State Farm is not estopped from raising policy defenses, because its denial of coverage was not wrongful. See *Ehlco*, 186 Ill. 2d at 150 (the estoppel doctrine applies only if the insurer wrongfully denied coverage).

¶ 39 Furthermore, we reject G.M. Sign's assertion that in *Schane* we determined that the amended complaint alleged claims that potentially fell within coverage. In the underlying litigation, after the trial court approved the settlement and entered judgment against Schane, State Farm filed a petition to vacate or modify the judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). *Schane*, 2013 IL App (2d) 120434, ¶ 1. The trial court dismissed the petition, finding that State Farm was not diligent in light of its decision not to accept the defense tender. *Schane*, 2013 IL App (2d) 120434, ¶ 1. State Farm appealed, arguing that it was diligent in defending the underlying suit and in bringing the section 2-1401 petition. *Schane*, 2013 IL App (2d) 120434, ¶ 2.

¶ 40 On appeal, we pointed out that two types of diligence must be shown: diligence with respect to the original action and with respect to the section 2-1401 petition itself. *Schane*, 2013 IL App (2d) 120434, ¶ 40. In discussing State Farm's diligence with respect to the original action, we set forth the chronology of events:

"Here, the trial court specifically found a lack of due diligence in presenting the defense or claim in the original action. However, the trial court did not focus on when State Farm became aware of the facts prompting its decision to file the section 2-1401 petition. State Farm had refused the tender of defense by relying on the explicit TCPA exclusion in Schane's insurance policy. G.M. Sign filed an amended complaint, which potentially brought the claims within the insurance policy. However, the amended complaint was filed *after* a settlement had been reached. Furthermore, when State Farm received the amended complaint, G.M. Sign did not attach a copy of the settlement agreement. Given these facts, there was no lack of diligence in State Farm's failure to defend under a reservation of rights, where a settlement had already been reached. Therefore, there could be no finding of a lack of due diligence in the original proceedings." (Emphasis in original.) *Schane*, 2013 IL App (2d) 120434, ¶ 41.

Thus, we assumed, *without deciding*, that for the purpose of demonstrating State Farm's due diligence with respect to the original action, the amended complaint potentially brought the claims stated therein within coverage. We said, in other words, that, even if the amended complaint stated claims that potentially would trigger coverage, State Farm's refusal to defend did not indicate a lack of due diligence, because the amended complaint was filed only after the case was settled. Nothing in the present opinion conflicts with *Schane*.

¶ 41 Although we already have rejected G.M. Sign's argument that the alternative counts in its amended complaint were broad enough to include faxes that did not violate the TCPA, we must also point out that, in pursuing this argument, G.M. Sign contradicts the position that it successfully advanced in the underlying litigation.

¶ 42 A review of the record is useful. All three counts of G.M. Sign's original complaint in the underlying litigation incorporated the same factual allegations: on or about September 6, 2007, Schane faxed to G.M. Sign an advertisement; G.M. Sign had not given Schane permission to fax advertisements to it; and Schane faxed "the same or similar advertisements" to G.M. Sign and more than 39 other recipients without first receiving their

express permission. Each count also proposed a virtually identical class: all persons who received fax advertisements, who had not given Schane permission to send the faxes, and who did not have established business relationships with Schane. Although the alternative counts of the original complaint alleged different theories of recovery than the TCPA count, all three counts incorporated identical facts alleging the sending of fax advertisements in violation of the TCPA.

¶ 43        Based on the allegations of its original complaint, G.M. Sign negotiated a $4.9 million settlement with Schane. The settlement agreement defined the class as "all persons to whom [Schane] sent *advertising* facsimiles during the period of September 7, 2007 through June 17, 2008." (Emphasis added.) The agreement further provided that, during that period, Schane faxed a total of 49,825 *advertisements* to the class members without their prior express permission. Moreover, the amount of the settlement was based on the potentially bankrupting TCPA damages. Specifically, the agreement recited that "a finding of liability under the TCPA with statutory damages of $500 per unsolicited fax would result in a damage award of $24,912,500.00 before trebling" and that "such a judgment would bankrupt [Schane] and cause the dissolution of his business." G.M. Sign reiterated these facts in its motion for certification of the class and for preliminary approval of the settlement. It emphasized that class certification was appropriate because Schane's conduct was "substantially similar as to each class member" and because common questions regarding Schane's violation of the TCPA could be "answered on a class-wide basis." Based on these representations, the trial court certified the class and approved the settlement.

¶ 44        Having obtained the benefit of its settlement agreement in the underlying litigation by taking the position that Schane sent unsolicited fax advertisements in violation of the TCPA, G.M. Sign should not now be permitted to argue that State Farm owed a duty to defend Schane because its amended complaint potentially included faxes that fell outside of the TCPA. See *American Country Insurance Co. v. Chicago Carriage Cab Corp.*, 2012 IL App (1st) 110761, ¶¶ 35-36 (holding that, where a party had obtained relief against an insured based on one position, it was judicially estopped from adopting a contrary position in an insurance coverage dispute involving the insurer). Nothing in the settlement agreement, the original complaint on which it was based, or the motion for class certification and preliminary approval of the settlement referenced any faxes that did not violate the TCPA. Although G.M. Sign amended its complaint shortly before receiving final approval of the settlement–deliberately excluding from the alternative counts any reference to the TCPA, to the faxes being advertisements, or to the lack of any established business relationships between Schane and the class members–the settlement agreement was not amended and the certified class remained unchanged. The settlement agreement, which resolved "*all disputes* between [Schane] and the Class" (emphasis added), recited that all 49,825 faxes that Schane sent to the class were advertisements. Having benefited from that position, G.M. Sign cannot now take a contrary position in this declaratory judgment action in an attempt to obtain insurance coverage for the settlement. See *American Country Insurance*, 2012 IL App (1st) 110761, ¶¶ 35-36.

¶ 45        We cannot rest our discussion here. G.M. Sign's attempt to pursue a contrary position in this declaratory judgment action thrusts into the forefront the larger issue of the role of its amended complaint in the underlying litigation. When G.M. Sign filed the amended complaint, it had already negotiated a settlement with Schane based on its original complaint,

and the trial court had already certified the class and preliminarily approved the settlement. G.M. Sign nevertheless filed the amended complaint, significantly altering the counts that the settlement agreement purported to resolve, for the admitted purpose of " 'plead[ing] into possible insurance coverage.' " *Schane*, 2013 IL App (2d) 120434, ¶ 7.

¶ 46     We doubt whether, under these circumstances, any amended complaint could have triggered State Farm's duty to defend. In essence, G.M. Sign was attempting to recharacterize, at the eleventh hour, the class action that it had already litigated and negotiated to settlement, for purposes of obtaining insurance coverage. This is not a strategy that courts should condone. See *James River Insurance Co. v. Fortress Systems, LLC*, 899 F. Supp. 2d 1331, 1335 (S.D. Fla. 2012) (rejecting an insured's attempt to "reverse course" and "change the factual basis" of a settlement reached in the underlying litigation in order to get "a second bite at the apple to plead into coverage" in an insurance coverage dispute). Moreover, G.M. Sign was attempting to trigger State Farm's duty to defend even though, under the terms of the settlement agreement, Schane was guaranteed not to be personally responsible for paying the judgment. Thus, when G.M. Sign filed the amended complaint, State Farm's duty to defend was moot. See *Aetna Casualty & Surety Co. v. Coronet Insurance Co.*, 44 Ill. App. 3d 744, 751 (1976) ("The purpose of a duty to defend an insured is to protect the insured from the expenses of the litigation as well as the liabilities for which he could be held."). Perhaps this explains why Schane's attorney tendered the amended complaint to State Farm at G.M. Sign's suggestion only six days before final approval of the settlement, conspicuously neglecting to attach a copy of the settlement agreement.

¶ 47                                    III. CONCLUSION

¶ 48     For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand with directions to enter judgment in favor of State Farm and against G.M. Sign on G.M. Sign's declaratory judgment complaint and to enter judgment in favor of State Farm and against G.M. Sign on State Farm's second amended counterclaim for declaratory judgment.

¶ 49     Reversed and remanded with directions.