2016 IL App (1st) 150873

FIRST DIVISION
JUNE 30, 2016

No. 1-15-0873

| | | |
|---|---|---|
| MORTESA "MARTY" FAYEZI and AMERICAN AWNING AND WINDOW COMPANY, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 13 CH 28448 |
| v. | ) ) | |
| ILLINOIS CASUALTY COMPANY, | ) ) | Honorable Rodolfo Garcia, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiffs-appellants Mortesa "Marty" Fayezi and American Awning & Window Co., Inc. (collectively, plaintiffs), appeal from the circuit court's order dismissing their amended complaint with prejudice in this insurance coverage declaratory judgment action. For the reasons set forth below, we affirm the judgment of the circuit court.

¶ 2                                          BACKGROUND

¶ 3      The plaintiffs initiated this declaratory judgment action to determine whether the defendant-appellee, Illinois Casualty Company (ICC), was obligated to defend a class action against ICC's insured, and to indemnify the eventual settlement of that underlying action.

¶ 4      ICC was the insurer for Pat's Pizzeria, Inc. (Pat's), the defendant in the underlying class action. ICC issued a "Businessowners Policy" to Pat's effective September 2, 2005, through

September 2, 2006 (the 2005-06 policy). Among other categories of coverage, the 2005-06 policy provides coverage for "Bodily Injury and Property Damage." That coverage was subject to certain exclusions, including an exclusion for:

> "Any liability or legal obligation of any insured with respect to 'bodily injury' or 'property damage' arising out of any of the following:
>
> * * *
>
> (g) The Telephone Consumer Protection Act (TCPA);[1] or
>
> (h) Any amendments to these other laws or by any other similar statutes, ordinances, orders, directives or regulations."

The 2005-06 policy separately sets forth coverage for "Personal and Advertising Injury." That category of coverage also contained an exclusion for "[a]ny liability or legal obligation of any insured with respect to 'personal and advertising injury' arising out of" the TCPA or "any amendments to these laws or any similar statutes, ordinances, orders, directives or regulations."

¶ 5 On or about March 31, 2006, Pat's transmitted unsolicited advertisements by facsimile (fax) to 3636 recipients. In April 2009, one of the recipients, Fayezi, filed a class action complaint (the underlying complaint) in the circuit court of Cook County on behalf of himself "and all other persons similarly situated" who had received such faxes.

---

[1]In relevant part, the TCPA prohibits the use of "any telephone facsimile machine *** to send, to a telephone facsimile machine, an unsolicited advertisement" if the sender does not have an "established business relationship with the recipient" and if the advertisement does not notify recipients that they may request to opt out of receiving any future unsolicited facsimile advertisements. 47 U.S.C. § 227(b)(1)(C) (2012).

¶ 6    The underlying complaint began with a "preliminary statement" that "[t]his case challenges [Pat's] practice of faxing unsolicited advertisements." The preliminary statement recites that the TCPA "provides a private right of action and provides statutory damages of $500 per violation" and states that the case was initiated "as a class action asserting claims against [Pat's] under the TCPA, the common law of conversion, and the consumer protection statutes forbidding and compensating unfair business practices." The preliminary statement specified that "[p]laintiff seeks an award of statutory damages for each violation of the TCPA."

¶ 7    The complaint alleged facts common to all counts that "[o]n or about March 31, 2006, Defendant faxed an advertisement to Plaintiff" and "faxed the same and similar advertisements to *** other recipients without first receiving the recipients' express permission or invitation."

¶ 8    The underlying complaint proceeded to plead three causes of action: count I asserted violation of the TCPA; count II pled a common-law count of conversion, alleging that Pat's had wrongfully "misappropriated the class members' fax machines, toner, paper and employee time"; and count III pled a violation of the Consumer Fraud and Deceptive Business Practices Act (Act). See 815 ILCS 505/2 (West 2012).

¶ 9    Count I pleaded that it was brought on behalf of a class including "[a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising *** by or on behalf of Defendant (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes and (4) with whom Defendant did not have an established business relationship." Count II and III contained identical statements, referring to persons who had received such faxes within five years (count II) or three

years prior to the filing of the action (count III).[2] Each of the three counts explicitly "incorporate[d] the preceding paragraphs as though fully set forth herein."

¶ 10      Pat's tendered defense of the underlying action to its insurer, ICC. However, ICC refused to defend the action, apparently on the basis of the 2005-06 policy's exclusions for "[a]ny liability or legal obligation" for bodily injury, property damage, or personal and advertising injury "arising out of" the TCPA (the TCPA exclusions).

¶ 11      Pat's and Fayezi subsequently entered into a settlement agreement of the underlying action, by which the parties agreed to an amount of liability that the class would seek to recover only from Pat's insurers, including ICC.

¶ 12      The recitals to that settlement agreement specify that "the Class includes 3,636 persons to whom Defendant faxed advertisements without prior express permission nor invitation" on or about March 31, 2006. The agreement recites that "a finding of liability under the TCPA with statutory damages of $500 per unsolicited fax would result in a damage award of $1,818,000.00 before trebling" and that "such a judgment would bankrupt [Pat's] and cause the dissolution of its business."

¶ 13      The parties agreed to seek court approval of a judgment against Pat's in the amount of $1,818,000. However, the settlement agreement specified that the plaintiffs would not seek recovery from Pat's but instead would proceed against Pat's insurers. Thus, Pat's agreed to assign to the class its rights under the 2005-06 policy, and the class "agree[d] to seek recovery to satisfy the Judgment only against [Pat's] insurers," including ICC.

----

[2]Apparently, the references to persons receiving faxes within three, four, or five years prior to the filing of the action were based on the applicable statutes of limitations for each of the three counts. However, the complaint did not specifically allege that Pat's had sent any fax advertisements other than those sent on or about March 31, 2006.

¶ 14    On July 14, 2010, the court in the underlying action approved the settlement agreement. In that order, the court certified a class consisting of "All persons to whom [Pat's] sent advertising facsimiles on or about March 31, 2006 *** without the recipients' prior express permission or invitation" and determined that Pat's had faxed 3636 such advertisements. The order approved the terms of the settlement agreement and entered judgment "in favor of the Class in the total amount of $1,818,000 *** said judgment to be satisfied only from [Pat]'s insurers."

¶ 15    On December 28, 2012, the plaintiffs initiated this action by filing a declaratory judgment complaint in the circuit court of Lake County, alleging that ICC was required to defend Pat's in the underlying action and to indemnify the resulting judgment in favor of the class. The complaint attached the 2005-06 policy, but reserved the right to amend the complaint if discovery revealed the existence of additional policies.

¶ 16    On April 23, 2013, ICC filed a *forum non conveniens* motion, arguing that Lake County was an improper forum, particularly since the underlying action was litigated in the circuit court of Cook County. Following extensive briefing, the circuit court granted ICC's motion and transferred the action to the circuit court of Cook County on September 6, 2013.

¶ 17    On May 29, 2014, ICC filed a motion to dismiss. Relying on the TCPA exclusions in the 2005-06 policy, ICC argued that it had no duty to defend the underlying class action or to indemnify the resulting judgment. In that motion, ICC relied heavily on the 2014 decision of the Second District of the Illinois Appellate Court in *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593. ICC argued that *G.M. Sign* had analyzed a "nearly identical" policy exclusion in a separate class action (filed by the plaintiffs' counsel in this case), also based on unsolicited faxes, which had pled the same three causes of action. ICC argued that *G.M.*

*Sign* presented an "identical scenario" and thus compelled a conclusion that ICC had no duty to defend or indemnify in this case.

¶ 18    On July 14, 2014, the plaintiffs filed a motion to strike ICC's motion to dismiss as improper, claiming that it was not a valid motion to dismiss but "an extraordinarily premature motion for summary judgment." In the alternative, the plaintiffs requested that any ruling on the motion "should be stayed until an evidentiary record can be developed through discovery."

¶ 19    On July 21, 2014, the court entered an order staying ICC's motion to dismiss and setting a briefing scheduling on the plaintiffs' motion to strike. However, before those motions were decided, the plaintiffs filed an amended declaratory judgment complaint on August 22, 2014.

¶ 20    Unlike the original complaint, the amended complaint included allegations questioning the validity of the TCPA exclusions in the 2005-06 policy. In particular, the amended complaint alleged, "upon information and belief," that the 2005-06 policy "was an attempted renewal of a 2004-05 Policy" and that earlier policies did *not* contain the TCPA exclusions.

¶ 21    The amended complaint further alleged that, since the underlying complaint sought certification of classes that included recipients of Pat's faxes up to five years prior to the filing of the action in 2009, the underlying complaint "raised the potential of claims within the 2003-04 and 2004-05 Policy periods." In turn, the plaintiffs pled, ICC would be obligated to defend those potential claims pursuant to such prior policies that did not contain the TCPA exclusions.

¶ 22    The amended complaint further alleged that, "upon information and belief," ICC violated Illinois law requiring an insurer "to provide notice of a material reduction in coverage 60 days before a policy renewal," claiming that ICC failed to provide notice of the TCPA Exclusions to be included in the 2005-06 policy. Due to ICC's alleged failure to give required notice, the plaintiffs alleged, the TCPA exclusions were "not validly part of the 2005-06 Policy."

¶ 23    On September 19, 2014, ICC filed a motion to dismiss the amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615, 2-619 (West 2014). That motion again urged that the Second District's decision in *G.M. Sign*, 2014 IL App (2d) 130593, was "factually and legally identical" to this case and supported a finding that ICC did not owe a duty to defend or indemnify the underlying action. In addition, ICC's motion to dismiss attached a notarized affidavit, dated September 17, 2014, addressing the amended complaints' allegations that the 2005-06 policy was a renewal of earlier policies.

¶ 24    In that sworn affidavit, Brian Doran states that he was the underwriting manager for ICC and was "personally familiar with the underwriting policies and procedures of [ICC] as well as the [underwriting] file management software and system." Doran averred that ICC's file system "reflects the policy history for any particular policy," including "whether there are any policy renewals *** for a particular insured." Doran stated that he was personally familiar with that system and was "able to look at a Policy issued during a particular Policy Period, and to determine whether that was the original Policy or if it was a renewal Policy." Doran averred that the 2005-06 policy "was the first Policy issued to [Pat's], and was not a renewal of any earlier policy issued to this insured." Thus, Doran averred that the amended complaint's allegations "that polices were in effect for any earlier period *** are not correct."

¶ 25    The plaintiffs filed a response to ICC's motion to dismiss the amended complaint on October 27, 2014. In that response, the plaintiffs urged that the motion to dismiss supported by Doran's affidavit was procedurally improper under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)) and was "actually a premature motion for summary judgment." The plaintiffs urged that they were entitled to conduct discovery to test the assertions in Doran's affidavit.

¶ 26 The plaintiffs' response also disputed ICC's contention that this case was controlled by *G.M. Sign*, contending that "materially different policy language" was at issue in *G.M. Sign* compared to the 2005-06 policy, and that the scope of the exclusion in ICC's 2005-06 policy was narrower. Specifically, the plaintiffs argued that the exclusion at issue in *G.M. Sign*, for injuries arising "directly or indirectly out of any action or omission that violates" the TCPA (2014 IL App (2d) 130593, ¶ 8), excluded any liability based on conduct that violated the TCPA, whereas the TCPA exclusions in ICC's 2005-06 policy excluded "liability arising out of the TCPA" but not "claims of all stripes premised on conduct underlying violations of the TCPA." The plaintiffs further argued that *G.M. Sign* conflicted with case law establishing that an insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear that the complaint's allegations fail to state facts that potentially bring the case within coverage.

¶ 27 On November 7, 2014, ICC filed a reply memorandum, in which it argued that since the plaintiffs failed to provide any counteraffidavit, the facts in Doran's affidavit "must be deemed admitted." ICC also argued that the plaintiffs were not entitled to discovery because they failed to file an affidavit pursuant to Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) "explaining what discovery or witnesses they would need to depose."

¶ 28 With respect to application of the TCPA exclusions, ICC's reply memorandum argued that the Second District's decision in *G.M. Sign* was directly on point and that the arguments raised by the plaintiffs in this case had been rejected by the Second District. Specifically, ICC argued that the TCPA exclusions relieved ICC of its duty to defend, as all three counts of the underlying class action complaint were based on the same conduct, which violated the TCPA.

¶ 29 On February 19, 2015, the trial court granted ICC's motion to dismiss the plaintiffs' amended complaint. The court's order found that "ICC's motion [and] affidavit are procedurally

proper" and that the Second District's decision in *G.M. Sign* was "controlling." The court dismissed the plaintiff's amended complaint in its entirety and with prejudice. The plaintiffs filed a notice of appeal on March 4, 2015.

¶ 30                                    ANALYSIS

¶ 31    We note that we have jurisdiction because the plaintiffs filed a notice of appeal within 30 days of the final judgment dismissing their complaint with prejudice. See Ill. S. Ct. R. 303(a) (eff. May 30, 2008).

¶ 32    ICC's motion to dismiss was premised upon sections 2-615 and 2-619 of the Code, which may be asserted in a single combined motion. See 735 ILCS 5/2-619.1 (West 2014). "A section 2-615 motion to dismiss tests the legal sufficiency of a complaint," whereas a "section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. "Specifically, section 2-619(a)(9) permits involuntary dismissal where the claim is barred by 'other affirmative matter.' " *Id.* (quoting 735 ILCS 5/2-619(a)(9) (West 2010). "When ruling on such motions, a court must accept as true all well-pleaded facts" but "cannot accept as true mere conclusions unsupported by specific facts." *Id.* "Our review of a dismissal under either section 2-615 or 2-619 is *de novo.*" *Id.*

¶ 33    The plaintiffs' appeal argues: (1) that the trial court improperly granted dismissal based upon extrinsic evidence (the Doran affidavit) and without allowing discovery as to whether ICC had issued prior policies; (2) even if there were no such prior policies, the TCPA exclusions in the 2005-06 policy did not exempt ICC from a duty to defend the underlying lawsuit; and (3) because ICC breached its duty to defend, ICC is estopped from contesting its obligation to

indemnify the settlement of the underlying action. Applying *de novo* review, for the reasons below we conclude that the plaintiffs' contentions lack merit.

¶ 34 First, as a procedural matter, the plaintiffs assert that the circuit court "improperly disregarded allegations and considered outside evidence"–the Doran affidavit–in deciding the motion to dismiss. They recognize that under section 2-619(a)(9) of the Code, a defendant can move to dismiss based on "affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2014). However, they contend that ICC's motion did not raise an "affirmative matter" but rather, improperly sought to address the essential issue of liability. Further, they assert that they should have been able to pursue discovery to test Doran's assertion that ICC did not issue earlier policies to Pat's.

¶ 35 In response, ICC argues that the Doran affidavit "did not address the ultimate issue of liability, which was whether ICC owed a duty to defend or duty to indemnify" but only addressed the plaintiffs' allegations as to whether ICC had issued earlier policies. ICC further argues that the plaintiffs cannot assert a need for discovery, because they failed to file any affidavit pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013).

¶ 36 We agree with ICC. First, we conclude that the section 2-619 motion, supported by Doran's affidavit, properly argued that the plaintiffs' action was "barred by other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2014)), and did not improperly dispute an essential issue regarding liability. The lone case cited by the plaintiffs for their argument on this point is *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, which concerned a lawsuit alleging that the plaintiff had been bitten by a dog on property owned by the defendant landlord. The landlord moved to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2010)), attaching an affidavit in which the landlord's officer averred that the landlord never owned or controlled the dog and had no

knowledge of prior biting incidents. *Id.* ¶ 21. On that basis, the trial court dismissed one count of the plaintiff's complaint alleging violation of the Animal Control Act (510 ILCS 5/1 *et seq.* (West 2010)). *Id.*

¶ 37    On appeal, the Fourth District concluded that **"s**ection 2-619(a)(9) of the Code was the wrong vehicle for [the landlord] to raise the issue of ownership \*\*\* because that issue did not constitute 'affirmative matter.' " *Id.* ¶ 27. The court explained that " 'affirmative matter' means some kind of defense other than a negation of the essential allegations of the plaintiff's cause of action." (Internal quotation marks omitted.) *Id.* ¶ 30 (quoting *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21, (2008)). The *Howle* court found that the landlord's motion to dismiss "did not argue that an affirmative matter independent of the complaint, such as immunity, *res judicata*, or a violation of the applicable statute of limitations, barred Howle's suit," but had "addressed an essential issue regarding liability–namely, ownership of the offending dog–and amounted to nothing more than [the defendant's] negation of an essential element of Howle's complaint." *Id.* ¶ 32. Thus, the claimed "affirmative matter" was "essentially an answer denying an allegation set forth in the complaint." *Id.* ¶ 36.

¶ 38    We do not find that *Howle* establishes that the motion to dismiss here was improper. Instead, we find that the motion to dismiss in this case is much more akin to that in *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341 (2010), an insurance coverage action where we affirmed a section 2-619 dismissal premised upon an "affirmative matter" demonstrating that the plaintiff was not entitled to coverage. In that case, the defendant insurer denied the plaintiff's claim for coverage relating to a motorcycle accident, after several unsuccessful attempts by the insurer to obtain information from the plaintiff. *Id.* at 343-44. The

plaintiff sued the insurer for breach of contract and for "vexatious and unreasonable delay in refusing to pay the claim." *Id.* at 344.

¶ 39 The insurer moved to dismiss pursuant to section 2-619 of the Code, alleging that plaintiff's failure to cooperate barred his claim. *Id.* The motion was supported by an affidavit of the insurer's claim representative, which attested that the plaintiff had breached the cooperation clause of the subject policy by, among other things, failing to submit to an examination under oath and failing to provide requested financial records; the affidavit also attached copies of the insurer's correspondence to the plaintiff. *Id.* at 347-48. On appeal, the plaintiff argued that the "section 2-619 motion merely constituted an attempt to negate the allegations in plaintiff's complaint" and that the trial court "improperly weighed State Farm's materials in dismissing his complaint." *Id.* at 344.

¶ 40 In our analysis, our court recognized that a section 2-619 motion "admits the legal sufficiency of the plaintiff's complaint but asserts affirmative defenses or other matter that avoids or defeats the plaintiff's claim." *Id.* We recognized: "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action" and "is something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." (Internal quotation marks omitted.) *Id.* at 344-45. We affirmed the dismissal of the *Piser* complaint, concluding that "the affidavit and supporting materials submitted *** in support of the motion to dismiss did not simply constitute a denial of plaintiff's allegations; rather, they raised additional affirmative matter barring his claim–breach of the cooperation clause." *Id.* at 346.

¶ 41    We find that *Piser* is instructive. In this case, Doran's affidavit presented an "affirmative matter" in the form of his sworn testimony, based on his personal familiarity with ICC's records, that the 2005-06 policy was *not* a renewal, as ICC had not issued earlier policies to Pat's. This sworn testimony did not merely deny, but *refuted* the plaintiffs' allegations that the 2005-06 policy was preceded by prior policies that did not contain the TCPA exclusions.

¶ 42    Furthermore, we also agree with ICC that the plaintiffs' failure to oppose the motion to dismiss with an affidavit pursuant to Illinois Supreme Court Rule 191(b) precludes them from asserting a right to discovery on the issue. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). "Affidavits in support of motions under section 2-619 are controlled by Supreme Court Rule 191." *Piser*, 405 Ill. App. 3d at 349.

¶ 43    Under Rule 191(b), a party opposing a section 2-619 motion to dismiss or a motion for summary judgment that is supported by the movant's affidavit may submit a counteraffidavit explaining why discovery is needed in order to obtain evidence necessary to oppose the motion. See *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380 (discussing Rule 191(b) in context of opposition to a motion for summary judgment in a foreclosure action). Thus, Rule 191(b) provides that:

> "If the affidavit of either party contains a statement that any of the
> material facts which ought to appear in the affidavit are known
> only to persons whose affidavits affiant is unable to procure ***
> naming the person[ ] and showing why their affidavit[ ] cannot be
> procured and what affiant believes they would testify to if sworn,
> *** the court may make any order that may be just, either granting
> or refusing the motion, or granting a continuance to permit

affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof." Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

"Parties who fail to file Rule 191(b) affidavits cannot complain that the discovery process was insufficient or limited." (Internal quotation marks omitted.) *Korzen*, 2013 IL App (1st) 130380, ¶ 48.

¶ 44 Furthermore, we note that "under well-established statutory procedure for section 2-619 motion practices, plaintiff's failure to properly contest [a movant's] affidavit by submitting a counteraffidavit is fatal to his cause of action. The failure to challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the fact stated therein. [Citation.]" *Piser*, 405 Ill. App. 3d at 352.

¶ 45 The plaintiffs do not dispute that they failed to file a Rule 191(b) affidavit explaining what discovery was needed, and did not file any counteraffidavit disputing the statements in Doran's affidavit. Rather, the plaintiffs' reply brief asserts that Rule 191 is inapplicable to ICC's motion, citing cases discussing why certain motions for *summary judgment* do not necessarily require strict compliance with Rule 191.

¶ 46 Our court has held: "There are two types of summary judgment motions: (1) a motion affirmatively showing that some element of the case must be resolved in the defendant's favor, requiring the defendant to prove something that it would not be required to prove at a trial, and (2) a motion of the kind recognized by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 *** (1986), in which a defendant points out the absence of evidence

- 14 -

supporting plaintiff's position." *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 368-69 (2006). "A *Celotex*-type motion is appropriate only when the nonmovant has had an adequate opportunity to conduct discovery." *Id.* at 369. "[S]trict compliance with Rule 191(b)'s affidavit requirement *** is not automatically necessary when a defendant files a *Celotex*-type motion." *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 26. "The trial court has discretion to permit a continuance for discovery without compliance with Rule 191(b)," as "it is critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment." (Internal quotation marks omitted.) *Id.* ¶ 27.

¶ 47    The plaintiffs assert that ICC's motion to dismiss was a *Celotex*-type motion, such that they do not have to comply with Rule 191(b). We disagree. ICC's motion was not a *Celotex*-type motion for summary judgment, which merely "points out the absence of evidence supporting plaintiff's positions." *Willett*, 366 Ill. App. 3d at 368. Rather, ICC moved to dismiss pursuant to section 2-619(a)(9), asserting an affirmative matter–Doran's sworn testimony–refuting the plaintiff's suggestion that ICC had issued earlier policies.

¶ 48    Thus, we agree with the trial court that the submission of Doran's affidavit in support of ICC's motion to dismiss was procedurally proper. Further, as the plaintiffs failed to file any Rule 191(b) affidavit, they cannot complain that further discovery was needed. Indeed, as the plaintiffs failed to file any counteraffidavit, the contents of Doran's affidavit were effectively admitted. *Piser*, 405 Ill. App. 3d at 352 ("The failure to challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the facts stated therein.").

¶ 49    Aside from their arguments that ICC's motion to dismiss was procedurally improper, the plaintiffs independently argue that, notwithstanding the TCPA exclusions, ICC had a duty to defend the underlying lawsuit. Specifically, they argue that the presence of the conversion claim

in the underlying complaint was independent of the TCPA count and thus implicated ICC's duty to defend.

¶ 50    The plaintiffs acknowledge that the TCPA exclusions stated that ICC's coverage did not apply to "[a]ny liability or legal obligation *** arising out of" the TCPA. However, they argue that the exclusions do not apply to "common law claims premised on identical facts, much less common law claims that might not be actionable under the TCPA at all." In essence, the plaintiffs argue that because their underlying complaint pled a count for conversion–although premised on the very same allegations as the TCPA count–ICC was obligated to defend the underlying action, notwithstanding the TCPA exclusions.

¶ 51    The Second District of our court has rejected this argument in a largely identical case (litigated by the plaintiffs' counsel in this case) that concerned application of a similar exclusion to a lawsuit with virtually identical allegations. *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593. As in this appeal, *G.M. Sign* concerned a declaratory judgment action involving insurance coverage for an underlying class action lawsuit arising out of unsolicited faxes. The underlying plaintiff, G.M. Sign, filed a class action alleging that the underlying defendant, Michael Schane, had faxed unsolicited advertisements for his business on September 6, 2007. *Id.* ¶¶ 5-6.

¶ 52    As in this appeal, G.M. Sign's underlying complaint against Schane contained three counts: (1) violation of the TCPA; (2) conversion; and (3) violation of the Act. *Id.* ¶ 6. Each count incorporated the same allegations concerning the September 6, 2007 faxes, and "[a]ll three counts incorporated allegations that the unsolicited fax advertisements violated the TCPA." *Id.* As in this case, the three counts in the original complaint proposed certification of classes consisting of persons who received fax advertisements from Schane within four, five, or three

years before the filing of the action, corresponding to the governing statutes of limitation for each cause of action. *Id.* ¶ 7.

¶ 53    Schane's business insurer, State Farm, denied coverage for G.M. Sign's lawsuit based on a policy exclusion that specified that the insurance did not apply to " 'Bodily injury, property damage, personal injury, or advertising injury *arising directly or indirectly out of* any action or omission that violates or is alleged to violate' " the TCPA. (Emphasis added.) *Id.* ¶ 8.

¶ 54    As in this case, G.M. Sign entered into a settlement agreement with Schane by which the class agreed to seek recovery only from Schane's insurers. Similar to the settlement in this case, the parties in the *G.M. Sign* underlying action agreed that Schane had faxed 49,825 advertisements and that " 'a finding of liability under the TCPA with statutory damages of $500 per unsolicited fax would result in a damage award of $24,912,500.00 before trebling.' " *Id.* ¶ 9. As in this case, the *G.M. Sign* settlement agreement noted that " 'such a judgment would bankrupt [Schane] and cause the dissolution of his business.' " *Id.* Schane agreed to the entry of a $4.9 million judgment entered against him, but the class agreed to "satisfy the judgment only from [Schane's] State Farm insurance policy." *Id.*

¶ 55    After the trial court gave preliminary approval of the settlement, G.M. Sign was granted leave to file an amended complaint whose "admitted purpose *** was to ' "plead into possible insurance coverage available under Schane's insurance policies." ' " (Internal quotation marks omitted.) *Id.* ¶ 12 (quoting *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434). Specifically, the counts alleging conversion and violation of the Act were amended, so that they "incorporated only those factual allegations that contained no reference to the TCPA." *Id.*

¶ 56    The trial court subsequently ordered final approval of the settlement. *Id.* ¶ 15. "Although the amended complaint proposed a different class for counts II and III than the class the trial

court had certified based upon the original complaint, the certified class and the settlement agreement remained unchanged." *Id.*

¶ 57 Mirroring this case, the plaintiffs in *G.M. Sign* then initiated an action seeking a declaration that State Farm owed Schane a duty to defend and to indemnify the $4.9 million judgment. State Farm filed a counterclaim based on its TCPA policy exclusion and moved for judgment on the pleadings. *Id.* ¶ 18. G.M. Sign filed a cross-motion for judgment on the pleadings, arguing that counts I and II "pleaded claims that were potentially within coverage." *Id.*

¶ 58 The trial court ruled that State Farm owed a duty to defend and indemnify because counts II and III of the amended complaint, alleging conversion and violation of the Act, "were broad enough to potentially include faxes not covered by" the TCPA exclusion. *Id.* After State Farm filed a second amended counterclaim and the parties filed cross-motions for summary judgment, the trial court held that State Farm was estopped from raising policy-based defenses to coverage. *Id.* ¶ 19.

¶ 59 On appeal, State Farm argued, *inter alia*, that it had no duty to defend because the exclusion in its policy for injury "arising directly or indirectly out of any action or omission that violated" the TCPA applied to all three counts of the underlying complaint, including the "alternative counts" for conversion and consumer fraud. *Id.* ¶ 22. The Second District agreed with State Farm.

¶ 60 In its analysis, the Second District first recognized:

> "Ordinarily, in a declaratory judgment action where the
> issue is an insurer's duty to defend, a court looks first to the
> allegations of the underlying complaint and compares them to the

insurance policy's relevant provisions. [Citation.] Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage. [Citation.] In determining whether there is a duty to defend, the allegations in the underlying complaint must be construed liberally, and any doubts must be resolved in favor of coverage. [Citation.]" *Id.* ¶ 25.

The Second District also recognized that "in construing an insurance policy, the court must ascertain the intent of the parties to the contract" and that "[i]f the words used in the policy are unambiguous, courts afford them their plain, ordinary, and popular meaning." *Id.* ¶ 26.

¶ 61    The Second District concluded that, in light of the State Farm policy's exclusion, "G.M. Sign's amended complaint did not allege claims that potentially fell within coverage." *Id.* ¶ 27. The court noted that G.M. Sign raised two arguments as to why the counts for conversion and violation of the Act potentially fell within coverage, notwithstanding the exclusion: "(1) the alternative counts had different elements and sought different damages than the TCPA count, and (2) the alternative counts were premised on different facts than the TCPA count and were broad enough to include faxes that did not violate the TCPA." *Id.*

¶ 62    As to the first argument, the Second District "disagree[d] that *** the pertinent analysis requires comparing the elements of the alternate counts to the elements of the TCPA count." *Id.* ¶ 28. Rather, since the language of the exclusion precluded coverage for injury " 'arising directly or indirectly' out of any action or omission that violates or is alleged to violate the TCPA," the Second District reasoned that the "proper analysis of the 'arising out of' language in [the

exclusion] is a 'but for' analysis, not an elements analysis." *Id.* (citing *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 154 (1984)).

¶ 63    The Second District noted that, in a decision assessing whether a personal injury lawsuit fell within an insurance policy covering injuries "arising out of" work by a subcontractor, our court reviewed the underlying complaint and found the insurer owed coverage where, " 'but for' the electrical subcontractor's [work] *** the underlying plaintiff would not have suffered injury." *Id.* ¶ 29 (citing *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 182 (2008)). Thus, the *G.M. Sign* court reasoned that the proper inquiry in assessing the applicability of the State Farm exclusion was "whether, but for Schane's alleged act of sending faxes that violated the TCPA, G.M. Sign would have suffered injury." *Id.*

¶ 64    The Second District reasoned that since all three counts were premised on the exact same conduct, which violated the TCPA, the exclusion in the State Farm policy barred coverage for all counts. The court specifically rejected G.M. Sign's argument that the alternative counts "were premised on different facts than the TCPA count and were broad enough to include faxes that did not violate the TCPA." *Id.* ¶ 30. The Second District held that although the alternative counts avoided reference to the TCPA or its statutory elements, "they nevertheless were based on the same facts as the TCPA count." *Id.* Specifically, "[a]ll three counts incorporated by reference the allegations that, on or about September 6, 2007," G.M. Sign and the class members had "received 'the same or similar unsolicited facsimiles.' Other than these factual allegations–which were the very allegations that formed the basis for the TCPA count–the amended complaint contained no allegations referencing any faxes sent by Schane." *Id.* Thus, "because it did not contain any factual allegations of faxes other than those that violated the TCPA, G.M. Sign's amended complaint did not trigger State Farm's duty to defend." *Id.* ¶ 34.

¶ 65    Moreover, the Second District noted that G.M. Sign's argument "contradicts the position that it successfully advanced in the underlying litigation." *Id.* ¶ 41. The Second District pointed out that the settlement agreement was based on the original complaint, in which "all three counts incorporated identical facts alleging the sending of fax advertisements in violation of the TCPA." *Id.* ¶ 42. Moreover, the "the amount of the settlement was based on \*\*\* TCPA damages," as the settlement agreement had recited the potential amount of TCPA statutory damages. *Id.* ¶ 43. The Second District reasoned that: "Having obtained the benefit of its settlement agreement in the underlying litigation by taking the position that Schane sent unsolicited fax advertisements in violation of the TCPA, G.M. Sign should not now be permitted to argue that State Farm owed a duty to defend Schane because its amended complaint potentially included faxes that fell outside of the TCPA." *Id.* ¶ 44. The Second District thus reversed the circuit court and directed it to enter judgment in favor of State Farm. *Id.* ¶ 48.

¶ 66    Notably, in a recent case involving ICC and the same exclusion language at issue in this appeal, the Second District relied on *G.M. Sign* to hold that ICC did not have a duty to defend a nearly identical underlying complaint. *Illinois Casualty Co. v. West Dundee China Palace Restaurant, Inc.*, 2015 IL App (2d) 150016. In *West Dundee*, a class action was filed containing the same counts at issue in this case: violation of the TCPA, conversion, and violation of the Act. *Id.* ¶ 5. Each count incorporated allegations that West Dundee had faxed unsolicited advertisements on or about May 16, 2006. *Id.*

¶ 67    ICC filed a complaint seeking a declaratory judgment that it had no duty to defend or indemnify the underlying action due to an exclusion in its policy for West Dundee, which–as in this case–specified that insurance did not apply to "Any liability or legal obligation of any

insured with respect to bodily injury or property damage arising out of" the TCPA. (Internal quotation marks omitted.) *Id.* ¶ 9.

¶ 68    After cross-motions for summary judgment, the trial court initially ruled that ICC had a duty to defend. *Id.* ¶ 10. However, upon a motion to reconsider, the trial court entered summary judgment in ICC's favor. *Id.* ¶ 11. The trial court found that under *G.M. Sign*, "the ICC policy exclusion language would apply to all counts" of the underlying complaint and "did not trigger a duty to defend or indemnify." *Id.* On appeal, the Second District agreed, affirming the judgment in favor of ICC.

¶ 69    In *West Dundee*, the plaintiff in the underlying class action unsuccessfully argued that *G.M. Sign* was not controlling because the exclusion in *G.M. Sign* differed from the ICC policy, as the State Farm policy excluded injuries " 'arising *directly or indirectly out of* any action or omission that violates' " the TCPA. (Emphasis in original.) *Id.* ¶ 18 (quoting *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 8). The plaintiff in the underlying action argued that because the ICC policy's exclusion "does not contain the words 'directly or indirectly,' coverage is excluded only for liability and legal obligations arising out of the TCPA itself." *Id.*

¶ 70    The Second District disagreed, finding that "[t]he allegations in the [conversion and consumer fraud] counts of the underlying complaint completely fail to state facts that either actually or potentially bring the case within, or potentially within, the policy's coverage." *Id.* ¶ 19. The *West Dundee* court reasoned that: "Common to all three counts are allegations that West Dundee sent the unsolicited faxes without the express permission or invitation of the underlying plaintiffs." *Id.* Thus, "the conduct alleged in [counts II and III] constitutes nothing more than a rephrasing of the conduct alleged in count I; that West Dundee violated the TCPA by 'sending advertising faxes [to the underlying plaintiffs] without first obtaining their prior

express permission or invitation.' " *Id.* ¶ 20. As "[a]ll three counts allege property damage arising out of the TCPA," the underlying complaint in *West Dundee* "did not trigger ICC's duty to defend." *Id.*

¶ 71    We find that the Second District's decisions in *G.M. Sign* as well as *West Dundee* are well-reasoned. Thus, we similarly hold that the allegations of the underlying complaint in this case did not trigger ICC's duty to defend in light of the TCPA exclusions.

¶ 72    The plaintiffs urge that *G.M. Sign* is distinguishable or otherwise erroneous. First, they urge that the language of the TCPA exclusions in ICC's policy–which exclude "[a]ny liability or legal obligation of any insured with respect to" bodily injury, property damage, or personal and advertising injury "arising out of" the TCPA–is narrower than the State Farm exclusion at issue in *G.M. Sign,* which excluded damages or injuries "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. (Emphasis and internal quotation marks omitted.) *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 8.

¶ 73    The plaintiffs argue that the exclusion in this case "is particular to 'liability or legal obligation *** arising out of' the [TCPA]" but that it "says nothing about common law claims premised on different facts, much less common law claims that might not be actionable under the TCPA at all." They further argue that the exclusion at issue in *G.M. Sign* "focused on the conduct of the insured" whereas ICC's policy excludes "*liability* arising out of the TCPA." They urge that ICC's exclusions "do not encompass claims of all stripes premised on conduct underlying violations of the [TCPA], as in *G.M. Sign*" but "narrowly exclude[ ] only the liability and legal obligations arising out of the TCPA itself" and "do[ ] not extend to the separate liability and legal obligations arising out of conversion and [consumer fraud] claims–whether or not they are premised on the same underlying conduct."

¶ 74    Just as the Second District did in *West Dundee*, we reject the attempts to distinguish *G.M. Sign* on the basis of such differences in the language in the exclusions. Although the particular wording of the exclusions differs slightly, we do not find that any such differences warrant a different outcome.

¶ 75    First, to the extent the plaintiffs assert that the TCPA exclusions "say nothing about common law claims *premised on different facts*," that argument fails, because the underlying complaint simply failed to plead any claims premised on any facts other than the March 31, 2006 fax advertisements that formed the basis for all three counts. Notably, although the complaint sought to define classes of persons who may have received faxes up to five years prior to its filing, the complaint did not actually allege that Pat's sent any other faxes on any date other than March 31, 2006.

¶ 76    Furthermore, we do not find that the wording of ICC's TCPA exclusions, compared to the language at issue in *G.M. Sign*, is sufficiently different so as to compel a different result. Rather, both the exclusion at issue in *G.M. Sign* and the TCPA exclusions in this case used unambiguously broad language to indicate that liability "arising" from the TCPA would not be covered. While the phrasing of the State Farm exclusion for damages to injury "arising directly or indirectly out of any action or omission that violates" the TCPA is undoubtedly broad, we do not find that the wording of ICC's policy exclusions for "[a]ny liability or legal obligation of any insured with respect to" injuries "arising out of" the TCPA is significantly narrower in scope. Rather, the phrases "any liability or legal obligation," "with respect to," and "arising out of" are plainly of broad meaning. The wording of the State Farm TCPA exclusion in *G.M. Sign*, as well as ICC's TCPA exclusions at issue in *West Dundee* and in this case, are sufficiently broad and

explicit to exclude coverage where, as here, a complaint fails to plead any cause of action that would not simultaneously implicate liability under the TCPA.

¶ 77    In this case (as in *G.M. Sign* and *West Dundee*), the underlying complaint failed to plead any specific facts that would support liability for counts II and III *but which would not also violate* the TCPA under count I. The counts for conversion and violation of the Act do not attempt to allege any other particular offending conduct other than the sending of unsolicited fax advertisements on or about March 31, 2006, the very same conduct underlying count I for violation of the TCPA. Indeed, counts II and III specifically incorporated the allegations in count I, the TCPA count, as well as the allegations in the complaint's "preliminary statement" referencing the TCPA. As in *West Dundee*, the counts in this case for conversion and violation of the Act were "nothing more than a rephrasing of the conduct alleged in count I" for violation of the TCPA. *West Dundee*, 2015 IL App (2d) 150016, ¶ 20.

¶ 78    Thus, just as the Second District found with regard to the identical exclusion in *West Dundee*, we find that all three counts of the underlying complaint in this case assert liability "arising out of" the TCPA. *Id*. Thus, plaintiffs' reliance on differences in the wording of the exclusions in *G.M. Sign* and this case is unavailing.

¶ 79    Separately*,* the plaintiffs contend that "even if ICC had the exclusion language State Farm did in *G.M. Sign*, Illinois duty to defend principles would still obligate a defense here." They argue that *G.M. Sign* contradicts the long-settled principle that an insurer is obligated to defend its insured unless the complaint clearly alleges facts that would preclude coverage.

¶ 80    The plaintiffs note that this principle was recently reiterated by our court in *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350. That decision discussed whether the insurer–who had issued policies to Illinois Tool Works between 1971 and

1987–had a duty to defend various toxic tort cases by plaintiffs alleging exposure to Illinois Tool Works' products. Many of the underlying complaints alleged "that exposure to an Illinois Tool product resulted in an injury, but d[id] not set forth when the exposure occurred or when the injury manifested." *Id.* ¶ 23.

¶ 81    Our court held that the insurer had a duty to defend these complaints, despite the absence of any specific allegation that the plaintiffs' exposure or injury had occurred during the time when the insurer's policies were in effect. In so holding, we recognized the "well-settled principle" that "vague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend." *Id.* ¶ 26. We reiterated: "An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage. [Citation.] An insurer may not refuse to defend its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.]" *Id.* ¶ 27. Our court concluded that even if certain complaints did not specify when the alleged injury occurred, "the ambiguous or unstated time period must be resolved in favor of a duty to defend" as "[t]he bare allegations of the underlying complaints leave open the possibility that the plaintiffs' exposure or injury occurred during the policy periods." *Id.*

¶ 82    The plaintiffs urge that we must find a duty to defend in this case, pursuant to *Illinois Tool Works* and other precedent regarding the liberal construction of a complaint's allegations in deciding an insurer's duty to defend.

¶ 83    Notably, the Second District rejected such an argument in *West Dundee*. See *West Dundee*, 2015 IL App (2d) 150016, ¶¶ 21-23. The *West Dundee* court reasoned that although *Illinois Tool Works* recognized that ambiguous allegations should be resolved in favor of finding

a duty to defend, under *West Dundee*'s facts "there [was] no factual uncertainty regarding time or anything else that is relevant" where the "underlying three-count complaint alleges that, on one specific date West Dundee faxed one specific unsolicited one-page advertisement." *Id.* ¶ 23.

¶ 84    The same reasoning applies in this case. The allegations in the underlying complaint in this case were *not* vague or ambiguous. Rather, all three counts were clearly predicated on the same facts, *i.e.*, Pat's transmission of unsolicited fax advertisements on or about March 31, 2006. Counts II and III of the complaint failed to plead any other wrongful acts, and explicitly incorporated the same allegations that formed the basis of count I for violation of the TCPA. Thus, as discussed above, all of the allegations clearly sought liability "arising out of" the TCPA, implicating the TCPA exclusions.

¶ 85    We also acknowledge the plaintiffs' argument that, whereas insurance policy terms providing for *coverage* are to be construed liberally in favor of the insured and against the insurer, providing a liberal construction to the terms of an *exclusion* has the opposite result of narrowing coverage in favor of the insurer and against the insured. As plaintiffs note, our court has held that a coverage *exclusion* should not be interpreted broadly in the same manner as a term providing coverage, "because a broad interpretation *** would expand the exclusion to the advantage of the insurer and would 'turn on its head established judicial precedent regarding liberal construction of insurance policies in favor of the insured.' [Citation.]" *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 970 (2005); *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716 (1995).

¶ 86    We recognize that the applicability of a policy exclusion "must be clear and free from doubt" in order to relieve ICC of the duty to defend. *Oakley*, 271 Ill. App. 3d at 722. However, in this case, we find that the TCPA exclusions *unambiguously* applied to the underlying complaint.

As we stated in *Oakley*, although "we are mindful of our obligation to liberally construe any doubts as to coverage in favor of the insured," "we are not authorized to exercise our inventive powers *** in order to create an ambiguity where none exists. We find the language at issue in this case to be clear on its face." *Id*. Similarly, in this case, we find that the application of the TCPA exclusions is clear.

¶ 87    Moreover, the terms of the settlement agreement and judgment entered in the underlying action indicate that the action was resolved on the basis of TCPA liability alone. It is apparent that the amount of the underlying settlement, $1,818,000, was calculated by multiplying the amount of $500 in statutory damages per TCPA violation by the number of fax advertisements (3636) transmitted by Pat's on or about March 31, 2006. As the Second District emphasized in *G.M. Sign*, the plaintiffs cannot take advantage of a settlement premised on violation of the TCPA and then assert that the complaint alleged liability independent of the TCPA. See *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 44 ("Having obtained the benefit of its settlement agreement in the underlying litigation by taking the position that Schane sent unsolicited fax advertisements in violation of the TCPA, G.M. Sign should not now be permitted to argue that State Farm owed a duty to defend Schane because its amended complaint potentially included faxes that fell outside of the TCPA.").

¶ 88    Based on the foregoing, we conclude that the allegations of the underlying complaint clearly implicated the TCPA exclusions. As a result, ICC did not have a duty to defend the underlying action.

¶ 89    In turn, because ICC did not have a duty to defend, we reject the plaintiffs' final argument that "having breached the duty to defend, ICC is estopped to contest indemnity" of the judgment following the settlement of the underlying action. "An insurer's duty to indemnify is

narrower than its duty to defend its insured." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 127 (1992). "Clearly, where there is no duty to defend, there will be no duty to indemnify \*\*\*." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). As ICC had no duty to defend the underlying action, it had no duty to indemnify the resulting judgment.

¶ 90    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 91    Affirmed.