2022 IL App (2d) 210333
No. 2-21-0333
Opinion filed February 10, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ADOPTION OF ARIANA B. KONIECZNY, an Adult | ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County.<br><br>No. 20-AD-26 |
| (Karen L. Magnuson and Scott C. Magnuson, Petitioners-Appellees, v. Frank J. Konieczny, Respondent-Appellant). | ) ) ) ) | Honorable James D. Orel, Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Karen Magnuson, the ex-wife of Frank Konieczny, and her new husband, Scott Magnuson, filed a petition to adopt Karen and Frank's adult daughter, Ariana Konieczny (now known as Ariana Magnuson). Karen and Scott did not name Frank as a party nor serve him with the adoption petition, although that petition alleged that Frank was an unfit parent and sought the termination of his parental rights. The trial court granted the adoption and, without making any finding regarding Frank's fitness, entered an order terminating Frank's parental rights. After he found out about the adoption judgment, Frank filed a petition to vacate under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). Frank's section 2-1401 petition sought to vacate only that portion of the judgment terminating his parental rights, on the grounds that the deprivation of those rights without notice or an opportunity to be heard violated due process, and

that the trial court lacked authority to enter any judgment with respect to him because it lacked personal jurisdiction over him. The trial court denied the section 2-1401 petition, and Frank appeals. We reverse the denial of the section 2-1401 petition and vacate a portion of the judgment as void.

¶ 2                                    I. BACKGROUND

¶ 3      The record of events prior to the adoption is sparse, gleaned mainly from the allegations of the adoption petition. The facts alleged therein are as follows. Ariana was born in 1999. Her parents were Frank and Karen, who were married. In 2005, a petition for dissolution was filed. The judgment for dissolution granted primary physical custody of Ariana to her mother, and thereafter Ariana lived with Karen. In 2010, Scott Magnuson began living with Karen and Ariana. In 2019, Karen and Scott married. On April 6, 2020, Karen and Scott (petitioners) filed a petition seeking to adopt Ariana, who was by then an adult, having attained the age of majority and graduated from high school. Ariana filed an affidavit in support of the petition.

¶ 4      There is no bar to the adoption of adults in Illinois. Under section 5 of the Adoption Act, a petition to adopt an adult must state the full names of the petitioners; their place of residence and how long they have lived there; the name, sex, and place and date of birth of the adoptee; and the name to be given to the adoptee. See 750 ILCS 50/5(B), (C) (West 2018). The consent of the adoptee's biological parents is not required; rather, the only person who must consent to an adult adoption is the adoptee. *Id.* § 8(e).

¶ 5      The adoption petition filed by Karen and Scott contained the information required by the statute. However, it also contained allegations *not* required in adult adoptions, such as an allegation that, when Ariana was still a minor, Frank "failed to exercise a reasonable degree of interest in [her] general health, education and welfare." This allegation mirrors one of the grounds for a

finding of parental unfitness and the consequent termination of parental rights to a minor child under the Adoption Act. See *id.* § 1(D)(b). The adoption petition also sought the entry of an order terminating Frank's parental rights. The petitioners did not give Frank notice that they had filed the adoption petition or that they sought to terminate his parental rights.

¶ 6    During the July 2020 hearing on the adoption petition, there was no inquiry into whether Frank was given notice of the petition and no mention of the allegation that he was an unfit parent during Ariana's minority. At the close of the hearing, the trial court entered the adoption decree prepared by the petitioners' lawyer. Among other things, the judgment recited in its introduction that it "appeared to the court" that Frank had no standing in the action because Ariana was an adult and that Frank was not entitled to "further notice" of the proceedings. The findings set out in the judgment included that Frank was not entitled to notice of the proceedings and that his consent was not required as Ariana was an adult. There were no findings that Frank was an unfit parent, either during Ariana's minority or after, or that he failed to maintain a reasonable degree of interest in her well-being. The listing of the relief granted by the judgment stated, in paragraph (B), that Frank "shall from this day forward be divested of all rights and privileges he may possess by virtue of his status as the father of [Ariana], and further, that he is forever barred from this Court or any other court for the purpose of seeking reinstatement of these rights."

¶ 7    Less than six months later, Frank filed a section 2-1401 petition seeking to vacate paragraph (B) of the adoption judgment, the paragraph that terminated all his parental rights. He did not seek to vacate the adoption itself. Frank's petition averred that he first learned in August 2020 of the adoption petition and subsequent judgment. He contended that the portion of the judgment that divested his parental rights and forever barred him from attempting to reinstate such rights was void, as the trial court did not have jurisdiction over him. He also argued that the

Adoption Act did not authorize the termination of his parental rights in an adult adoption. The petitioners moved for the dismissal of Frank's section 2-1401 petition, arguing that Frank had no standing to contest the divestment of his parental rights, because his consent to the adoption was not required and he had not sought to intervene in the adoption proceedings, either before or after the entry of the judgment. The petitioners further argued that, as Ariana was an adult, Frank had no parental rights with respect to her anyway.

¶ 8     After briefing and a hearing, the trial court granted the petitioners' motion to dismiss Frank's section 2-1401 petition on the grounds that he lacked standing and that, even if Frank had been deprived of due process by the failure to serve him, biological parents did not have due process rights in adult adoption proceedings. Frank now appeals.

¶ 9                                    II. ANALYSIS

¶ 10     The primary issue before us is whether the trial court correctly dismissed Frank's section 2-1401 petition on the basis that he lacked standing. "Section 2-1401 petitions are essentially complaints inviting responsive pleadings." *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). Such petitions, which are governed by the rules of civil procedure, are subject to dismissal on the same grounds as ordinary complaints. *Id.* Here, the petitioners moved to dismiss the section 2-1401 petition pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)).

> "Section 2-619(a)(9) of the Code permits dismissal of an action where 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' 735 ILCS 5/2-619(a)(9) (West 2014). The phrase 'affirmative matter' refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. [Citation.] A motion to dismiss under section 2-619 admits well-pleaded facts

but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint. [Citation.] In addition, a defendant does not admit the truth of any allegations in the complaint that may touch on the affirmative matters raised in the section 2-619(a)(9) motion to dismiss." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16.

The correctness of a dismissal pursuant to section 2-619(a)(9) presents a question of law, which we review *de novo*. *Id.* ¶ 17.

¶ 11 The correctness of the trial court's dismissal of Frank's section 2-1401 petition depends on whether Frank had standing to petition the court pursuant to section 2-1401 of the Code to vacate paragraph (B) of the adoption judgment. The petitioners argue that he had no standing, as he was not named in the adoption petition and did not move to intervene in the adoption proceedings. Frank argues that he had standing because the adoption judgment injured him by permanently terminating all of his parental rights. Frank is correct.

¶ 12 Relief under section 2-1401 is available to one who is injured by a judgment and who would derive benefit from its reversal. *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434, ¶ 34. Thus, even nonparties to an action may, under certain circumstances, bring petitions under section 2-1401. *Id.* Such nonparties need not first move to intervene in the action. See *id.* ¶¶ 34-36 (nonparty insurer against whom relief had been entered in the judgment could move to set aside that judgment, even though it had not moved to intervene). We also note that, as a practical matter, it would be illogical to require Frank to have intervened in proceedings he was not aware of and that were completed before he could have sought intervention. Thus, Frank had standing to file his section 2-1401 petition. We turn to the question of whether the section 2-1401 petition was properly dismissed.

¶ 13 Ordinarily, section 2-1401 petitions must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002). However, a section 2-1401 petition alleging that an order or judgment is void need not contain these allegations. *Id.* at 104 ("the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence"). An order is void if it was entered by a court that lacked jurisdiction of the parties or of the subject matter. *Id.* at 103.

¶ 14 Frank argues that, because the adoption petition sought the termination of his parental rights, due process required that he be given notice of the petition and an opportunity to be heard. See *People ex rel. Nelson v. Depositors State Bank*, 377 Ill. 602, 609 (1941) (the "[e]ssential elements of due process of law are notice and an opportunity to be heard"); see also *Feen v. Ray*, 109 Ill. 2d 339, 345-46 (1985) (parties whose rights will be affected by a judgment are necessary parties; the necessary-party rule "reflects a long-standing policy against affecting the rights and interests of absent parties who do not have an opportunity to protect their interests"). Because Frank did not receive any notice, the trial court lacked personal jurisdiction over him and could not enter an order terminating his rights. Thus, he argues, the trial court lacked the authority to include the language of paragraph (B) in the adoption judgment, and that portion of its judgment is void.

¶ 15 There is no dispute that the trial court had no jurisdiction over Frank, who had not been served with the adoption petition. Thus, it had no power to enter an order terminating his parental rights (much less one barring him from ever challenging that termination in any court, as paragraph (B) also purported to do). "It is generally accepted that, under fundamental principles of due process, a court is without jurisdiction to enter an order or judgment which affects a right or interest

of someone not before the court." *Feen*, 109 Ill. 2d at 344. Frank's section 2-1401 petition, which properly alleged the voidness of a portion of the judgment, should not have been dismissed.

¶ 16 The petitioners argue that the trial court correctly dismissed the section 2-1401 petition, because Frank had not sustained any injury in fact, despite his allegations to the contrary. On appeal, they argue that the language in their adoption petition and the adoption judgment terminating his parental rights was merely "surplusage" that had no effect because, as a legal matter, Frank had no parental rights that survived Ariana becoming an adult anyway.

¶ 17 The petitioners' current description of the language permanently terminating Frank's parental rights as unimportant surplusage is at odds with their conduct throughout the adoption proceedings. Although allegations regarding a biological parent's fitness are legally irrelevant and wholly unnecessary in an adult adoption proceeding, the petitioners nonetheless chose to include such allegations in the adoption petition. And, although they now concede that they should not have done so, they intentionally included language permanently terminating Frank's parental rights in the adoption judgment they drafted, which the trial court entered. Then, when Frank sought to vacate only that language from the judgment, the petitioners objected and sought the dismissal of his section 2-1401 petition. We cannot accept their current suggestion that the language in the judgment permanently terminating Frank's parental rights was merely the accidental inclusion of "surplusage" rather than a deliberate attempt to achieve a particular legal outcome.

¶ 18 Turning to the merits of their argument, we observe that the petitioners have not carried their burden of showing that, as a matter of law, Frank had no parental rights that could be lost. See *Federated Industries, Inc. v. Reisin*, 402 Ill. App. 3d 23, 27 (2010) (movant bears the initial burden to show the existence of an affirmative matter barring relief under section 2-619).

¶ 19    The petitioners note that section 17 of the Adoption Act provides that,

> "[a]fter either the entry of an order terminating parental rights or the entry of a judgment of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents." 750 ILCS 50/17 (West 2018).

Frank responds that this provision does not apply here, as it expressly applies only when the adoptee is a "child." Ariana was not a child when she was adopted, under the Adoption Act's definition of a "child" as "a person under legal age." *Id.* § 1(A). Frank asserts that the Adoption Act is silent on the effect of an adult adoption on the relationship between the adoptee and her biological parents.

¶ 20    Frank's interpretation of section 17 as expressly applying only to the adoption of minor children is supported by an analysis of the Adoption Act. The language of a statute is the most reliable indicator of the legislature's objectives in enacting it (*Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001)), and "[o]ne of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole" (*J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007)). As noted, section 1 defines "child" as a minor (see 750 ILCS 50/1(A) (West 2018)), and the use of the term "child" in other provisions of the Adoption Act is consistent with that definition. Section 3 distinguishes between children and adults in defining who may be adopted. *Id.* § 3. Section 5 sets out different requirements for adoption petitions in adoptions of children versus adults. *Id.* § 5. Section 7 requires notice to biological fathers only in child adoption proceedings, which is consistent with the provisions in that section and section 8 specifying that the consent of biological parents to adult adoptions is not needed. See *id.* §§ 7, 8(a)(4). Section 8 requires different consents

by biological parents of children versus adults. Thus, when section 17 speaks only of the effect of an adoption judgment on "the natural parents of a *child*," canons of statutory construction support Frank's position that the legislature intended this section to apply only in the adoption of minors and deliberately chose not to include broader or additional language extending the reach of the section to adults. (Emphasis added.) See *id.* § 17.

¶ 21    The petitioners do not directly dispute Frank's argument that section 17 applies only to the adoption of minor children. However, they argue that it would be anomalous for the legislature to specifically provide for the termination of parental rights when a minor is adopted, but not to do so for adult adoptions. In support, they cite *In re Estate of Brittin*, 279 Ill. App. 3d 512 (1996). There, the trial court held that, just as an adult adoptee was the heir of his deceased adoptive parent, the adoptee's children who were in existence at the time of the adult adoption were likewise heirs of the decedent. *Id.* at 514. The decedent's other heir appealed, arguing that the legislature did not intend to treat adult adoptees the same as child adoptees with respect to inheritance rights. *Id.* at 514-15. The reviewing court rejected this argument, stating that "[a] careful review of the Adoption Act reveals no statutory distinction between an adopted adult and an adopted minor." *Id.* at 516.

¶ 22    The petitioners make much of this statement. However, they fail to include the rest of the quoted passage, which in its entirety states:

> "A careful review of the Adoption Act reveals no statutory distinction between an adopted adult and an adopted minor *with respect to the nature of the legal relationship created between the adoptee and the adopting parent*, namely, a parent-child relationship. The adoptee, regardless of his age upon adoption, attains the status of a natural child of the adopting parents." (Emphasis added.) *Id.*

This passage, read as a whole, speaks only to the effect of an adult adoption on the relationship created between the adoptee and the adoptive parents. It is silent on, and cannot be read as a comment upon, the effect of an adult adoption on the pre-existing relationship between the adoptee and her biological parents.

¶ 23    Indeed, because *Brittin* holds that courts should not read provisions into a statute that the legislature did not choose to include, that case actually supports Frank's position. In *Brittin*, the court held that a distinction between minors and adults could not be read into the statute where it did not exist. See *id.* By the same token, where the legislature has chosen to limit the application of a provision such as section 17 to child adoptees, we cannot ignore that choice and hold that the provision should apply to adult adoptees as well. See *id.*; see also *In re Michael D.*, 2015 IL 119178, ¶ 9 (courts should not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent).

¶ 24    The petitioners have not cited, and we have not found, any Illinois case law holding that an adult adoption severs all ties between the adoptee and her biological parents. We note that, although several cases speak of adoption severing such ties, all of those cases involve minor children, who would be subject to section 17 of the Adoption Act. Moreover, under Illinois law, certain aspects of the adoptee's original parent-child relationship may remain after adoption, even for minor children. See *In re M.M.*, 156 Ill. 2d 53, 62 (1993) (even after adoption of a child, biological parents remain subject to a residual duty to support their child, and the child retains the right to inherit from and through her biological parents).

¶ 25    Our supreme court has stated that "[a]doption is the legal and social process by which a nonbiological parent-child relationship is created." *Id.* But the creation of a new parent-child relationship need not always require the loss of all former parent-child relationships. In the case of

a minor child, the need for clear lines restricting who has the right to the care, custody, and control of a child supports the severance of the relationship between the adopted child and her biological parents embodied in section 17 of the Adoption Act. When the adoptee is an adult able to direct her own affairs, however, the need for such severance by operation of law is absent. This point has been ably expressed by the courts of sister states:

> "In the adoption of a minor, it is necessary to establish an immediate and continuing 'undisturbed relationship,' [citation], between the adoptee and the adoptive parent or parents for the sake of the adoptee's stability in home and everyday life. [Citation.] Hence, the adoption statute requires the parental rights of a minor's birth parent or parents to have been either surrendered or terminated before an adoption is finalized. [Citations.]
>
> Such a surrender or termination of parental rights is not required, by contrast, in the adoption of an adult. [Citation.] This is presumably because the adoptee is, after all, an adult, readily capable of managing his or her own relationships to the extent permitted by law. Nowhere in the adoption statute did the legislature evince the intent to vitiate that capability by requiring an adult adoptee to terminate his or her legal relationship with both birth parents *** in order to effectuate an adoption otherwise authorized by the statute."
> *In re Y.L.*, 190 A.3d 1049, 1050 (N.H. 2018).

See also *In re Estate of Nicol*, 377 A.2d 1201, 1207 (N.J. Super. Ct. App. Div. 1977) (" '[t]he complete severing of the relation to natural parents is not accomplished in an adult adoption' "). For all of these reasons, we reject the petitioners' argument that the legislature must have intended section 17 of the Adoption Act to apply in adult adoptions as well as in child adoptions, and that thus Frank could not have had any parental rights to lose.

¶ 26 Frank's section 2-1401 petition also alleged that Ariana has a child, and Frank argues that his right to grandparent visitation provides additional proof that the permanent deprivation of his parental rights in paragraph (B) of the adoption judgment indeed caused him real injury. Although there is no Illinois case law on the issue, he points to cases from Indiana and Florida in which courts held that an adult adoption does not sever the ties between biological grandparents and their grandchildren who are the children of adult adoptees. See *In re Guardianship of J.E.M.*, 870 N.E.2d 517 (Ind. Ct. App. 2007); *Worley v. Worley*, 534 So. 2d 862 (Fla. Dist. Ct. App. 1988).

¶ 27 The record does not disclose that Frank has filed any petition seeking such visitation with Ariana's child, and thus, when the trial court entered the adoption judgment, these asserted visitation rights were potential, not actual. Moreover, Illinois law places a high burden on grandparents seeking visitation with grandchildren against the wishes of the children's parents. See 750 ILCS 5/602.9 (West 2018) (parents' decisions regarding grandparent visitation are presumed not to cause undue harm to their children's mental, physical, or emotional health, and a grandparent seeking visitation bears the burden of overcoming this presumption). Nevertheless, Frank's biological parent-child relationship with Ariana did exist at the time the adoption judgment was entered, and that relationship is legally relevant to various potential claims under Illinois law. The purported termination of Frank's parental rights contained in paragraph (B) could, if not vacated, prevent Frank from even being able to assert such a claim. We see no authority in the Adoption Act for the trial court's termination of Frank's parental rights, without cause, simply because his adult daughter Ariana was adopted by others.

¶ 28 Regardless of the exact scope of Frank's parental rights following Ariana's adoption, we find that he did not lose all such rights. He was entitled to notice and an opportunity to be heard before those parental rights could be terminated by a court. Thus, the trial court, which lacked the

power to enter any order affecting Frank's rights and interests, wrongly dismissed his section 2-1401 petition.

¶ 29    Further, as the trial court lacked personal jurisdiction over Frank, that portion of its adoption judgment purporting to terminate his parental rights is void and must be vacated. *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 17 ("[a] judgment entered by a court that lacks jurisdiction over the parties is void"). If the voidness of a judgment or a portion of a judgment is raised during a proceeding properly pending before a court, "the court has an independent duty to vacate the void judgment and may do so *sua sponte*." *In re N.G.*, 2018 IL 121939, ¶ 57.

¶ 30                                III. CONCLUSION

¶ 31    The order of the circuit court of Du Page County dismissing Frank's section 2-1401 petition is reversed, and the adoption judgment entered by that court on July 23, 2020, is vacated in part. Specifically, paragraph (B) of the adoption judgment is hereby vacated as void. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). The remainder of the adoption judgment, which was not challenged in the section 2-1401 petition and is not before this court, remains in effect.

¶ 32    Section 2-1401 petition's dismissal reversed; underlying judgment vacated in part.

---

**No. 2-21-0333**

---

| | |
|---|---|
| **Cite as:** | *In re Adoption of Konieczny*, 2022 IL App (2d) 210333 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 20-AD-26; the Hon. James D. Orel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael T. Navigato, of Bochte, Kuzniar & Navigato, P.C., of St. Charles, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Roy F. McCampbell, of Elmhurst, for appellees. |

---